[No. 68017-5.   En Banc.]
Argued May 31, 2000.     Decided July 27, 2000.

*In the Matter of the Personal Restraint of* JOSE ECHEVERRIA,
*Petitioner.*

*Jose P. Echeverria*, pro se.

*Eric J. Nielsen* and *Eric Broman* (of *Nielsen, Broman & Associates, P.L.L.C.*), for petitioner.

*Steven M. Lowe, Prosecuting Attorney for Franklin County*, and *Paige L. Sully, Deputy*; and *Pamela B. Loginsky* (of *Washington Association of Prosecuting Attorneys*), for respondent.

*Todd Maybrown* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

*Christine O. Gregoire, Attorney General*, and *John J. Samson, Assistant*, on behalf of Attorney General's Office, amicus curiae.

SMITH, J. — Petitioner Jose Echeverria seeks review of a decision of the Court of Appeals, Division Three, which dismissed his personal restraint petition in which he claimed his exceptional sentence for murder in the second

degree is unlawful because the Superior Court for Benton and Franklin Counties denied him his right of allocution during his sentencing hearing. The Court of Appeals concluded that Petitioner's sentence was not subject to collateral attack by personal restraint petition because denial of his right of allocution was "non-constitutional error" which did not inherently result in a "complete miscarriage of justice."[1] This Court granted review. We affirm.

## QUESTION PRESENTED

The question presented in this case is whether Petitioner's exceptional sentence for murder in the second degree is subject to collateral attack by personal restraint petition in which he claims the trial court denied him his right of allocution during his sentencing hearing.

## STATEMENT OF FACTS

On May 1, 1996, Petitioner Jose Echeverria,[2] then 16 years old, pleaded "guilty" in the Superior Court for Benton and Franklin Counties to murder in the second degree under RCW 9A.32.050(1)(b).[3]

The "Statement of Defendant on Plea of Guilty" provided in part:[4]

6. IN CONSIDERING THE CONSEQUENCES OF MY GUILTY PLEA, I UNDERSTAND THAT:

(a) The crime with which I am charged carries a maximum sentence of _life_ years imprisonment and a $ _50,000_ fine. The standard sentence range is from _144_ months to

---

[1] Washington Court of Appeals Order Dismissing Personal Restraint Pet. (May 4, 1999) at 1-2.

[2] The Statement of Defendant on Plea of Guilty lists Petitioner's name as "Jose Pineda Echeverria." Petitioner, however, signs his name as "Jose Echeverria."

[3] See Resp. to Personal Restraint Pet. at App. B and C (including Report of Proceedings, May 1, 1996 and Statement of Defendant on Plea of Guilty).

[4] *Id.* at App. C.

___192___ months confinement, based upon the prosecuting attorney's following understanding of my criminal history:

> *1994 Juvenile Malicious Mischief 2°*
> *1994 Juvenile Theft 2°*
> *1995 Juvenile Malicious Mischief 2°*
> *1995 Juvenile Minor in Possession of Firearm*

. . . .

(f) The prosecuting attorney will make the following recommendation to the judge:

> *State will ask for an exceptional sentence of 32 years; Defense can argue sentencing and appeal an exceptional sentence; State will reduce charges to Felony Murder 2°*

. . . .

During his sentencing hearing on June 18, 1996 before the Honorable Carolyn A. Brown, Petitioner was examined extensively by his own counsel on direct examination, during which his counsel asked him whether there was "something [Petitioner] wanted to tell the [c]ourt about [Petitioner's] participation" in the shooting.

Petitioner's statement to the court then followed:

Q  Are you Jose Echeverria and are you the defendant in this action?

A  Yes, sir.

Q  Okay. And you've previously pled guilty to Murder in the Second Degree?

A  Yes, sir.

Q  And the death of Mr. [Andres] Elizondo?

A  Yes, sir.

. . . .

Q  Okay. Now, you handed me a handwritten note that you wrote. *Is there something that you wanted to tell the [c]ourt about your participation in this thing?*

A  *Yeah. You know, I think that I, you know, I deserve to get—*

Q  You can look at the Judge, okay?

A  *You know, first of all, you know, Your Honor, I would like*

to say that I'm sorry, you know, for what happened to Mr. Andres Elizondo, you know, because see this guy he tried to say I wasn't remorseful and everything, but he don't know. He don't know what's really going on inside my heart.

And I really do, you know, deep down inside I feel that, you know, that I should be punished, you know, because I was there, you know? But I just don't think that I should get that much time, as much as the Prosecutor is trying to give me because, you know, that's like taking my whole future away. And, you know, I'm still young and everything, you know?

I wish that I could have a second opportunity in life because I know I could be changed, you know, if only I could be given the opportunity because when I was out, you know, I was young, drunk and stupid. I'm still young, but I'm no longer drunk or stupid, you know?

And I know that if I could just have that chance to change my life around, I would do it because I don't gang bang no more. You know, I told everybody I don't gang bang. I get along with some of the guys from 18th Street, now. You know, they get locked and they put them with me sometimes. We get along. I don't respect them no more and they don't respect me. That's the way it goes, you know?

I know that if I do get that time, you know, I'm not gonna have an opportunity in life. You know, I've got a daughter and everything and I haven't even got to hold her in my arms and everything. You know, I just feel sad, you know because I know, you know, deep inside my heart I don't think—I don't think I shot or anything, you know. But it's just I can't tell you that I did or not because I just don't remember.

And, you know, that's why I think I should, you know, get just a little bit of time, but I don't think I deserve that. Because I was there and everything, but I'm trying to change my life around, you know, and I'm still young. So I think, you know, I hope and pray, you know, that maybe you can give me a chance and everything and give me a second opportunity in life because thirty-two years—

You know, sixteen years, man, that's way too long. That's more than what I lived. You know, like everybody, he try to say that I was a leader in the plan. I'm no leader. I was just, you know, I was just, you know a young kid trying to have some fun

*and I just—I love partying, you know? I love drugs, you know? Just alcohol, though. You know?*

*So and I hope and pray that you give me another chance and everything. Thank you.*[5]

. . . .

(Emphasis added.)

Petitioner was cross-examined at some length by the Prosecuting Attorney and gave further details concerning his involvement in the offense.[6] After hearing other testimony, Judge Brown imposed upon Petitioner an exceptional sentence of 384 months.[7]

Petitioner Echeverria, through court-appointed counsel, filed a notice of appeal to the Court of Appeals, Division Three.[8] The Court of Appeals "placed [the] matter on the motion on the merits docket pursuant to RAP 18.14."[9] On November 6, 1997, Court of Appeals Commissioner Joyce J. McCown dismissed the appeal and affirmed Petitioner's conviction and sentence on the merits.[10] The Court of Appeals noted the findings of the trial court in support of the exceptional sentence that "gang activity was a motivating factor; the crime involved a high degree of long-term planning; the crime took place within the victim's zone of privacy; and the facts were extreme and egregious beyond that normally involved in a charge of this nature."[11] Commissioner McCown concluded "[T]here is no need to remand

---

[5] Resp. to Personal Restraint Pet. at App. A (including Report of Proceedings (June 18, 1996) at 178, 198-200).

[6] Report of Proceedings (June 18, 1996) at 178, 198-200.

[7] Supplemental Br. of Pet'r at 1. Before the Legislature amended RCW 9.94A.310 in 1997, the standard range sentence for second degree murder for a defendant with an offender score of 2 was 144-192 months. *See* LAWS OF 1997, ch. 365, § 3 (rewriting seriousness score XIII which included "Murder 2" under former RCW 9.94A.320).

[8] Supplemental Br. of Pet'r at 1. The record does not include the date of filing.

[9] *Id.* at App. A, Commissioner's Ruling No. 15944-2-III, at 1.

[10] *Id.* at 1 and App. A.

[11] *Id.* at App. A.

this matter as it is clear there are other aggravating factors present supporting the exceptional sentence and the sentencing court would still have imposed the exceptional sentence [of 384 months]."[12] Petitioner did not raise the issue of allocution on appeal.[13]

■ On August 10, 1998, Petitioner Echeverria, acting pro se, filed in the Court of Appeals, Division Three, a personal restraint petition in which he claimed ineffective assistance of counsel and denial of his right of allocution. On May 4, 1999, the Court of Appeals, the Honorable John A. Schultheis writing, signed an order dismissing the petition. In addressing Petitioner's claim of error concerning his right of allocution, Chief Judge Schultheis concluded it was "insufficient to support relief by way of personal restraint petition" because denial of this right was "non-constitutional error" which did not inherently result in a "complete miscarriage of justice."[14]

On May 18, 1999, Petitioner, acting pro se, filed in this Court a motion for discretionary review. On September 1, 1999, this Court granted review only on the issue of allocution and not on the issue of ineffective assistance of counsel.[15]

On October 8, 1999, Petitioner, through court-appointed counsel, filed a motion to amend his personal restraint petition to include the issue "[w]hether [P]etitioner was denied effective assistance of counsel where counsel failed to argue on direct appeal that [P]etitioner's right of allocu-

---

[12] *Id.*

[13] *Id.* In a general sense, allocution is a statement in mitigation by a defendant to a sentencing judge prior to sentencing. *See* BLACK'S LAW DICTIONARY 76 (6th ed. 1990).

[14] Washington Court of Appeals Order Dismissing Personal Restraint Pet. (May 4, 1999) at 1-2.

[15] Washington Supreme Court Order Granting Discretionary Review, No. 68017-5, which stated in part: "The parties shall submit additional briefing focusing on the allocution issue. The Clerk shall appoint counsel for the Petitioner . . . ."

tion was denied."[16] The Supreme Court Commissioner passed the motion to the merits.[17] We granted Petitioner's motion to amend his personal restraint petition and considered his argument on ineffective assistance of counsel.

## DISCUSSION

On August 10, 1998, Petitioner Jose Echeverria filed a personal restraint petition in which he claimed his exceptional sentence is unlawful because the Superior Court for Benton and Franklin Counties denied him the right of allocution during his sentencing hearing. Whether Petitioner is entitled to collateral relief depends upon the characterization of his claim of error. In a collateral attack on a conviction or sentence by personal restraint petition, this Court "will reach the merits of a constitutional issue when the petitioner demonstrates that the alleged error gives rise to actual prejudice,[18] and will reach the merits of a nonconstitutional issue when the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice."[19]

In this case, Petitioner claims his right of allocution is guaranteed under the United States Constitution and the Washington Constitution.[20] He claims the trial court's denial of this right constitutes a constitutional error giving rise to actual and substantial prejudice.[21] In the alternative, he claims that, even if the right of allocution is

---

[16] The record does not include the name of Petitioner's court-appointed counsel on appeal.

[17] Letter from Ronald R. Carpenter, Supreme Court Deputy Clerk, to "Counsel & Mr. Echeverria" (Oct. 8, 1999) at 1.

[18] The standard of "actual prejudice" also has been referred to as one of "actual and substantial prejudice." *See In re Personal Restraint of Cook*, 114 Wn.2d 802, 810, 792 P.2d 506 (1990) (citing *In re Personal Restraint of Haverty*, 101 Wn.2d 498, 504, 681 P.2d 835 (1984) and *In re Personal Restraint of Hews*, 99 Wn.2d 80, 88, 660 P.2d 263 (1983)).

[19] *In re Personal Restraint of Cook*, 114 Wn.2d at 813.

[20] Reply Br. of Pet'r at 1-5, 16-18.

[21] Supplemental Br. of Pet'r at 28.

considered to be nonconstitutional, denial of this right constitutes a fundamental defect which inherently results in a complete miscarriage of justice.[22]

## SOURCE OF ALLOCUTION RIGHT UNDER FEDERAL LAW

When adopted in 1944, Federal Rule of Criminal Procedure (FRCP) 32(a) provided in part:

> Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment.[23]

In *Green v. United States*, "petitioner claim[ed] that the failure of the judge to inquire of the defendant if he had anything to say on his own behalf prior to sentencing rendered the subsequent sentence illegal under Federal Criminal Rule 32(a)."[24] In interpreting Rule 32(a), the United States Supreme Court noted:

> [I]ts legal provenance was the common-law right of allocution. As early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal. *See Anonymous*, 3 Mod. 265, 266, 87 Eng. Rep. 175 (K. B.). Taken in the context of its history, there can be little doubt that the drafters of Rule 32(a) intended that the defendant be personally afforded the opportunity to speak before imposition of sentence. We are not unmindful of the relevant major changes that have evolved in criminal procedure since the seventeenth century—the sharp decrease in the number of crimes which were punishable by death, the right of the defendant to testify on his own behalf, and the right to counsel. But we see no reason why a procedural rule should be limited to the circumstances under which it arose if reasons for the right it protects remain. None of these

---

[22] *Id.* at 29-30.

[23] *Green v. United States*, 365 U.S. 301, 303 n.1, 81 S. Ct. 653, 5 L. Ed. 2d 670 (1961); *see also* FRCP 32 at Advisory Committee Notes. Rule 32(a) has been recodified as Rule 32(c)(3)(C), which now provides: "**Imposition of Sentence.** Before imposing sentence, the court must . . . address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of the sentence."

[24] *Green v. United States*, 365 U.S. 301, 303, 81 S. Ct. 653, 5 L. Ed. 2d 670 (1961).

modern innovations lessens the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation. The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself.[25]

After recognizing the importance of the right of allocution in *Green v. United States*, the United States Supreme Court concluded in *Hill v. United States* that "failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus."[26] Petitioner in *Hill* filed a motion to vacate sentence because the trial court did not ask him whether he wished to make a statement on his own behalf before imposition of sentence.[27] He nonetheless was not entitled to collateral relief because the trial court's oversight, although a violation of Federal Rule of Criminal Procedure 32, was not an error of constitutional dimension.[28] Indeed, the United States Supreme Court in *Hill* stated "It [was] an error which is neither jurisdictional nor constitutional. It [was] not a fundamental defect which inherently result[ed] in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure."[29]

As noted in *Green v. United States*, a defendant's right of allocution is derived from the common law and the Federal Rules of Criminal Procedure. Petitioner in this case claims there is also a constitutional source for this right because the United States Supreme Court in *Hill v. United States* left "the door open to the proposition that under exceptional circumstances the denial of the right may be a due process

---

[25] *Id.* at 304. "Habeas corpus" is generally equivalent to Washington's "personal restraint" petition.

[26] 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962).

[27] *Id.* at 425.

[28] *Id.* at 428.

[29] *Id.*

violation . . . ."[30] In *McGautha v. California*, the United States Supreme Court reserved for consideration the issue whether due process is denied when a defendant makes an unequivocal request to exercise the right of allocution and the trial court denies the request.[31] This case, however, does not involve that problem. During the sentencing hearing, Judge Brown was presiding when Petitioner's counsel asked him on direct examination whether he had anything to say to the court. Petitioner then immediately addressed the court at length without interruption.

■ Citing *Hill v. United States*, the Court of Appeals in this case correctly concluded Petitioner's right of allocution is nonconstitutional in nature. It also correctly concluded that Petitioner "has not presented . . . any evidence of how [denial of this right] resulted in a 'complete miscarriage of justice' . . . ."[32] Like the trial court in *Hill*, the Superior Court for Benton and Franklin Counties in this case did not specifically ask Petitioner whether he wished to make a statement in his own behalf before imposition of sentence. However, the record indicates Petitioner did indeed make an extensive allocutive statement to the court in his testimony during his sentencing hearing on June 18, 1996 after his counsel asked him on direct examination whether he had anything to say to the court.

### SOURCE OF ALLOCUTION RIGHT UNDER STATE LAW

■ Petitioner claims that, even if the right of allocution is not guaranteed under the United States Constitution, it is guaranteed under the Washington Constitution. Since its establishment as a state, the State of Washington has

---

[30] Reply Br. of Pet'r at 2-3.

[31] 402 U.S. 183, 218 n.22, 91 S. Ct. 1454, 28 L. Ed. 2d 711 (1971). *See also Boardman v. Estelle*, 957 F.2d 1523, 1530 (9th Cir. 1992) (when "a defendant, either unrepresented or represented by counsel, makes a request that he be permitted to speak to the trial court before sentencing," it is a denial of due process not to grant the defendant's request).

[32] Washington Court of Appeals Order Dismissing Personal Restraint Pet. (May 4, 1999) at 2.

provided defendants with a right of allocution only by statute.[33] The statute, last recodified as former RCW 10.64.040, provided in part:

> When the defendant appears for judgment, he must be . . . asked whether he have [sic] any legal cause to show why judgment should not be pronounced against him.

The Legislature repealed RCW 10.64.040 in 1984 after enactment of the Sentencing Reform Act of 1981.[34] At the time of its repeal, former RCW 10.64.040 had already been substantially replaced by former CrR 7.1(a)(1),[35] which provided:

> **(a) Sentencing.**
>
> (1) *Imposition of Sentence.* Sentence shall be imposed or an order deferring sentence shall be entered *without* unreasonable delay. Pending such action the court may release or commit the defendant, pursuant to CrR 3.2. *Before disposition the court shall afford counsel an opportunity to speak and shall ask the defendant if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment.*

(Emphasis added.) Former CrR 7.1 was rewritten in 1984 and recodified as CrR 7.2 with deletion of the allocution provision.[36] "The deleted language addressed matters that [were] now covered in more detail in RCW 9.94A.110."[37]

RCW 9.94A.110, now in effect, provides in part:

> **Sentencing hearing—Presentencing procedures.** Before imposing a sentence upon a defendant, the court shall conduct a sentencing hearing. . . .
>
> . . . .
>
> *The court shall* consider the risk assessment report and presentence reports, if any, including any victim impact state-

---

[33] *See, e.g.,* Hill's Code of Proc. § 1339 (1891); Pierce's Code Title 135, § 1243 (1912); former RCW 10.64.040.

[34] Laws of 1984, ch. 76, § 33.

[35] 82 Wn.2d 1159-60 (1973).

[36] 101 Wn.2d 1115-16 (1984).

[37] Comment to CrR 7.2, 101 Wn.2d at 1116.

ment and criminal history, and *allow arguments from* the prosecutor, the defense counsel, *the offender*, the victim, the survivor of the victim, or a representative of the victim or survivor, and an investigative law enforcement officer *as to the sentence to be imposed*.[38]

(Emphasis added.)

Under former RCW 10.64.040, former CrR 7.1 and RCW 9.94A.110, a defendant's right of allocution is derived from state statutes. Its legal provenance under state law is not constitutional in nature. Citing *In re Personal Restraint of Powell*,[39] Petitioner nevertheless claims the right of allocution is guaranteed under the Washington Constitution.[40] In *Powell* this Court stated:

> Petitioners correctly point out that it is a violation of due process . . . to deny a defendant the opportunity to speak immediately prior to the imposition of a sentence, *State v. Happy*, 94 Wn.2d 791, 620 P.2d 97 (1980).[41]

It is questionable whether the Court intended to announce a rule that the right of allocution is constitutional. The Court in *Powell* cited *State v. Happy* as authority. In *Happy* this Court considered a defendant's right of allocution only under former CrR 7.1(a)(1) and not under the due process clause of either the Washington Constitution or the United States Constitution.[42] Even if the court intended to declare a constitutional due process right, Petitioner Echeverria in this case *was not denied* the "opportunity to speak immediately prior to imposition of sentence."

Petitioner claims, in the alternative, that even if the right of allocution is not guaranteed under the United States

---

[38] The Legislature has amended RCW 9.94A.110. Laws of 2000, ch. 75, § 8. The provisions relevant to this case, however, have not been changed.

[39] 117 Wn.2d 175, 814 P.2d 635 (1991).

[40] Reply Br. of Pet'r at 16-18.

[41] *In re Personal Restraint of Powell*, 117 Wn.2d at 200.

[42] 94 Wn.2d 791, 792, 620 P.2d 97 (1980) ("This appeal relates to the question of the petitioner's right of allocution under CrR 7.1(a)(1).").

Constitution, the Washington Constitution affords greater protection by guaranteeing the right under Washington Constitution article I, section 3[43] and article I, section 32.[44] He argued the *Gunwall* factors in a comprehensive brief.[45] But he still could not establish that the trial court's not using ritualistic language specifically asking him whether he had anything to say resulted in "actual prejudice."

■ ■ RCW 9.94A.110 provides in part: "The court shall . . . allow arguments from . . . the offender . . . as to the sentence to be imposed." The record indicates Petitioner made an "argument" for leniency as part of his direct testimony during his sentencing hearing on June 18, 1996. This met the requirement of RCW 9.94A.110. The statute does not require that Petitioner's "argument" be made *immediately* prior to imposition of sentence. It does not specify when the court must allow the argument so long as it is made in the sentencing hearing at some time prior to imposition of sentence.

Although we conclude in the limited circumstances of this case that Appellant was afforded his right of allocution by addressing the court at length on matters of mitigation during the sentencing hearing and prior to imposition of sentence, we nevertheless believe trial courts should scrupulously follow RCW 9.94A.110 by directly addressing defendants during sentencing hearings, asking whether they wish to say anything to the court in mitigation of sentence, and allowing "arguments from . . . the

[43] Article I, section 3 of the Washington Constitution provides: "No person shall be deprived of life, liberty, or property, without due process of law."

[44] Article I, section 32 of the Washington Constitution provides: "A frequent recurrence to fundamental principles is essential to the security of individual right and the perpetuity of free government." The right of allocution, while important, does not appear to be "fundamental" when the purpose of the right has changed over the years from "legal cause" under former RCW 10.64.040 (1983) to "information in mitigation of punishment" under former CrR 7.1(a)(1) to "argument" under RCW 9.94A.110.

[45] Supplemental Br. of Pet'r at 14-22. The *Gunwall* factors include "(1) the textual language; (2) differences in the texts; (3) constitutional history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern." *State v. Gunwall*, 106 Wn.2d 54, 58, 720 P.2d 808 (1986).

offenders[s] . . . as to the sentence to be imposed." This would unequivocally acknowledge the right of allocution as a significant aspect of the sentencing process.

Petitioner has not demonstrated "actual prejudice" in the imposition of his aggravated exceptional sentence under former RCW 9.94A.390, which at the time of his sentencing hearing on June 18, 1996 provided in part:

**Departure from the guidelines. . . .**

The following are illustrative factors which the court may consider in the exercise of its discretion to impose an exceptional sentence. The following are illustrative only and are not intended to be exclusive reasons for exceptional sentences.

. . . .

(2) Aggravating Circumstances

. . . .

(d) The current offense was a major economic offense or series of offenses, so identified by a consideration of any of the following factors:

(i) The current offense involved multiple victims or multiple incidents per victim;

. . . .

(iii) The current offense involved a high degree of sophistication or planning or occurred over a lengthy period of time; or

. . . .

(j) The defendant's prior unscored misdemeanor or prior unscored foreign criminal history results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter as expressed in RCW 9.94A.010.[46]

Under RCW 9.94A.390, the trial court determined, as justification for the exceptional sentence, that gang activity was a motivating factor; the crime involved a high degree of long-term planning; the crime took place within the victim's zone of privacy; and the facts were extreme and egregious beyond that normally involved in a charge of this nature.

---

[46] The 1996 version of RCW 9.94A.390 became effective on March 21, 1996. Laws of 1996, ch. 121, § 2.

Petitioner nevertheless claims he "was not allowed to address the court and argue for mercy or leniency, which could have convinced the court to impose a sentence within the standard range or one less severe."[47] The fact that Judge Brown imposed an exceptional sentence of 384 months upon Petitioner for second degree murder does not of itself establish that Petitioner was denied his right of allocution.

Under RCW 9.94A.110, the trial court must consider many factors before imposing a sentence, including criminal history and arguments from the prosecutor, defense counsel, the offender, the victim, the survivor of the victim, and an investigative law enforcement officer. Judge Brown heard Petitioner's "argument" for leniency when he addressed her upon the invitation of his counsel during his direct testimony. She also heard the State's recommendation for an exceptional sentence of 384 months and received information concerning Petitioner's criminal history of malicious mischief in the second degree under RCW 9A.48.080, theft in the second degree under RCW 9A.56.040 and possession of firearm by minor under RCW 9.41.040. She then imposed the exceptional sentence recommended by the prosecutor.

Petitioner's exceptional sentence for murder in the second degree is not subject to collateral attack by personal restraint petition in which he claims the trial court denied him his right of allocution during his sentencing hearing. He cannot establish that his claim of error is constitutional in nature under either federal or state law. Nor can he establish that his claim of error resulted in either "actual prejudice" or "a complete miscarriage of justice." From the record in this case, it is established that Petitioner did in fact make an "argument" for leniency in his direct testimony during his sentencing hearing on June 18, 1996, which satisfied the requirement of RCW 9.94A.110. This was an allocutive statement made to the court in mitigation of punishment and can be characterized as allocution.

---

[47] Supplemental Br. of Pet'r at 29.

*INEFFECTIVE ASSISTANCE OF COUNSEL*

■ ■ Petitioner next claims he was denied effective assistance of counsel because his court-appointed counsel did not raise the issue of allocution on appeal.[48] The constitutional right to counsel includes the right to effective assistance of counsel.[49] A criminal defendant bears the burden of establishing a violation of that right by showing both deficient performance and resulting prejudice.[50] Deficient performance is established by proof that counsel's representation "fell below an objective standard of reasonableness based on consideration of all the circumstances."[51] Prejudice is established where "there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different."[52] "Courts engage in a strong presumption counsel's representation was effective."[53]

Petitioner in this case has not overcome the strong presumption that his counsel's representation was effective. It was not necessary for counsel to raise the issue of allocution on appeal, Petitioner having made an allocutive statement to the court in his direct testimony during his sentencing hearing. Even if he had not made a plea for mercy,[54] Petitioner has not demonstrated he would have been prejudiced by counsel's performance in not raising the issue on appeal. Court of Appeals Commissioner McCown correctly stated in her ruling: "[T]here are other aggravating factors present supporting the exceptional sentence and the sentencing court would still have imposed the excep-

---

[48] Supplemental Br. of Pet'r at 30-32.

[49] *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) *adopted in State v. Jeffries*, 105 Wn.2d 398, 418, 717 P.2d 722 (1986).

[50] *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

[51] *Id.*

[52] *Id.* at 335.

[53] *Id.*

[54] *State v. Lord*, 117 Wn.2d 829, 897, 822 P.2d 177 (1991) ("Allocution is a plea for mercy . . . .").

tional sentence [of 384 months]." The issue of allocution is nevertheless before this Court and we have given attention to it. It is not significant whether Petitioner's counsel raised the issue on appeal because we have considered it.

## SUMMARY AND CONCLUSIONS

In a collateral attack on a sentence, this Court will reach the merits of a constitutional issue when the petitioner demonstrates that the alleged error gives rise to actual prejudice, and will reach the merits of a nonconstitutional issue when the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice.

Petitioner's claim that he was denied his right of allocution does not involve a constitutional issue. The right of allocution is derived historically from the common law, Federal Rule of Criminal Procedure 32, former RCW 10.64.040, former CrR 7.1 and RCW 9.94A.110. In *In re Personal Restraint of Powell,* this Court made a statement that "it is a violation of due process . . . to deny a defendant the opportunity to speak immediately prior to the imposition of a sentence . . ." citing as authority *State v. Happy.* That case does not support a conclusion that the right of allocution is a constitutional due process right. In fact, mere reference in *Powell* to "violation of due process" does not establish that allocution is a constitutional due process right.

The right of allocution being nonconstitutional in this case, Petitioner was not able to distinguish his case from *Hill v. United States* and, at any rate, did not establish that denial of the right resulted in a complete miscarriage of justice. RCW 9.94A.110 provides in part: "The court shall . . . allow arguments from . . . the offender . . . as to the sentence to be imposed." It does not specify when in the sentencing hearing the court must allow the "argument." It is sufficient if it is made prior to imposition of sentence. The record indicates Petitioner did indeed make an allocutive statement to the court in his direct testimony during his

sentencing hearing on June 18, 1996 when his counsel asked him whether he had anything to say to the court. This satisfied the requirement of RCW 9.94A.110. Petitioner's exceptional sentence for murder in the second degree is not subject to collateral attack by personal restraint petition. But even so, the sentence imposed by the trial court was justified by the criteria cited in support of it.

The constitutional right to counsel includes the right to effective assistance of counsel. A criminal defendant bears the burden of establishing a violation of that right by showing both deficient performance and resulting prejudice. Courts engage in a strong presumption that counsel's representation was effective. Petitioner in this case has not overcome this presumption by his claim that his court-appointed counsel was not effective because counsel did not raise the issue of allocution on appeal. He was not denied effective assistance of counsel. The record indicates Petitioner indeed made an allocutive statement to the court during his sentencing hearing and thus exercised his right of allocution. Besides, we considered the issue of allocution as a significant aspect of this appeal.

The trial court found sufficient aggravating factors to justify imposition of an exceptional sentence of 384 months. Although harsh, it was nevertheless justified under the facts established in the record.

We affirm the decision of the Court of Appeals, Division Three, which dismissed the personal restraint petition in which Petitioner Jose Echeverria claimed the Superior Court for Benton and Franklin Counties denied him his right of allocution before imposing upon him an exceptional sentence of 384 months upon his conviction for murder in the second degree. While we agree with the result reached by the Court of Appeals in dismissing Petitioner's personal restraint petition, we do not necessarily adopt the entire language of its order.

GUY, C.J., and JOHNSON, MADSEN, ALEXANDER, TALMADGE, SANDERS, IRELAND, and BRIDGE, JJ., concur.