IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69120-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JAMES O. WIGGIN, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | FILED: March 10, 2014 |

BECKER, J. — Appellant James Wiggin challenges an order sentencing

him to a 12-month term of community custody. Because he was denied his right

of allocution, we reverse and remand for a hearing before a different judge.

On March 22, 2010, after a bench trial in front of Judge Gerald Knight,

Wiggin was convicted of one count of failing to register as a sex offender during

the period April 7 to May 30, 2009. The standard range for that offense is 0 to 12

months in jail. Judge Knight sentenced Wiggin to 30 days in jail with credit for

time served and 36 months of community custody. Wiggin appealed the

community custody term. The State conceded error. This court remanded the

case for resentencing. "We accept the State's concession that under the

applicable version of the statute, former RCW 9.94A.505(2)(b) (2008), where an

offender is sentenced to not more than one year of confinement, the term of

community custody should not have exceeded one year." State v. Wiggin, noted at 161 Wn. App. 1020, 2011 WL 1534508, at *4, review denied, 172 Wn.2d 1019 (2011).

Following remand, the trial court made several attempts to resentence Wiggin. Our disposition is based on the first attempt. On November 22, 2011, the State presented ex parte a document titled "Agreed Order Modifying Judgment and Sentence." The prosecutor later explained that he "handed up" an agreed order under the mistaken belief that the court had no discretion to order anything less than 12 months. Report of Proceedings (Feb. 17, 2012) at 2. This purportedly agreed order, which imposed 12 months of community custody, was not signed by defense counsel. In fact, it had never been seen by Wiggin or defense counsel. Judge Richard Okrent, Judge Knight's successor, signed the order. When Wiggin learned of this document several months later, he appealed. The State agreed to a resentencing hearing. The State's memorandum explaining the situation notes that Wiggin "argued that he was not given an opportunity to be heard at the resentencing." Clerk's Papers at 354.

A resentencing hearing was set for February 17, 2012. Wiggin was present and represented by counsel. Wiggin's position was that the trial court should impose little or no community custody. He objected that he had been transported from Department of Corrections custody to the jail without knowing what the hearing would be about, he was unable to meaningfully confer with an attorney before the hearing, and he was unable to obtain mental health records to support his argument for mitigation. At the end of the hearing, Judge Okrent

once again imposed 12 months of community custody. Wiggin appealed. The State agreed that Wiggin should have another resentencing hearing, where he would have notice and the opportunity to confer with counsel before the hearing, and where he would have the opportunity to present his mental health records as mitigating evidence in support of his request that the term of community custody be less than 12 months.

The most recent resentencing began with an initial hearing on June 8, 2012. At the hearing, Wiggin asked Judge Okrent to recuse himself because "essentially the court has ruled on this matter twice, once through the original ex-parte order and once through at the last hearing, and Mr. Wiggin feels that you are predisposed towards -- both times you've come to the conclusion of 12 months probation." The judge continued the hearing until the following week and said he would take the issue of recusal under advisement in the meantime. "If I decide to recuse myself, I'll do it by a written entry so you'll know ahead of time."

The continued hearing occurred on June 12, 2012. The record does not include a written entry on the recusal issue. Wiggin asked for a ruling on the recusal issue. Judge Okrent responded, "I'm not going to recuse myself as I have already made a decision in this case. I will not recuse myself and the record will reflect that. Let's proceed." The judge proceeded to hear argument from defense counsel as to why, in Wiggin's particular circumstances, a 12-month term of community custody would be too onerous. The judge began to discuss the history of the case and noted that he had read the entire file, including the supplemental materials concerning Wiggin's mental health history.

3

At this point, defense counsel interrupted and stated that Wiggin wanted to address the court before it ruled. The judge then heard from Wiggin, who reviewed the case in detail and argued that his situation warranted a term of community custody at the bottom end of the range of 0 to 12 months. Judge Okrent announced that he would adhere to the decision he had reached at the hearing on February 17, 2012. "And I've heard the argument from Mr. Wiggin and I appreciate his point of view and I think he's had his chance to explain to me his rationale . . . . Nonetheless, he's similarly situated with this crime to others. As a result, I'm going not to change my original sentence. It will be 12 months concurrent with the other conviction in terms of community custody." (The "other conviction" is a robbery conviction; Judge Okrent learned at the February 17 hearing that Wiggin was serving a prison sentence for the robbery, to be followed by an 18-month term of community custody. Wiggin argued that he hoped to prevail in an appeal of the robbery conviction).

Wiggin appeals from the 12-month term of community custody imposed on June 12, 2012. He contends the trial court abused its discretion by denying his motion to recuse. He asks this court to remand for resentencing by a different judge.

Wiggin first argues that the trial court's denial of his request for recusal was based on an erroneous understanding that Wiggin was trying to file an untimely affidavit of prejudice.

Affidavits of prejudice permit a party to change judges once as a matter of right. RCW 4.12.050(1); State v. Dominguez, 81 Wn. App. 325, 328, 914 P.2d

4

141 (1996). But an affidavit of prejudice must be filed and called to the attention of the judge before he or she makes any ruling whatsoever in the case. RCW 4.12.050(1). No such deadline exists to bar motions for recusal. These two methods by which a party may attempt to effect a change of judge—affidavit of prejudice and request for recusal—are independent of each other and are analyzed by different legal standards.

At the hearing on June 12, 2012, Judge Okrent announced that he was "not going to recuse myself as I have already made a decision in this case." While this statement can be construed as the result of confusing a recusal motion with an affidavit of prejudice, it may have simply meant that the judge had already decided not to recuse himself. Wiggin did not seek clarification in the trial court. Under these circumstances, where the issue is raised for the first time on appeal, we decline to speculate that Judge Okrent thought he was dealing with an affidavit of prejudice. We presume that he knew he was denying a request for recusal, and we will evaluate that decision accordingly.

A trial judge's decision whether to recuse him or herself is reviewed for an abuse of discretion. State v. Leon, 133 Wn. App. 810, 812, 138 P.3d 159 (2006), review denied, 159 Wn.2d 1022 (2007). "A judge *shall* disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." CJC Canon 2.11(A) (emphasis added). In determining whether recusal is warranted, actual prejudice need not be proved; a mere suspicion of partiality may be enough to warrant recusal. Sherman v. State, 128 Wn.2d 164, 205, 905 P.2d 355 (1995). The test for determining whether the judge's

impartiality might reasonably be questioned is an objective test and assumes that a reasonable person knows and understands all relevant facts. Sherman, 128 Wn.2d at 206.

On June 8, 2012, Wiggin requested Judge Okrent to recuse himself on the ground that the judge had already imposed a 12-month term twice, once through the order presented ex parte by the State on November 22, 2011, and again at the flawed hearing on February 17, 2012, where Wiggin had not been given the opportunity to consult with counsel in advance or present mitigating evidence. Wiggin contends that it was not possible for him to get a fair and unbiased hearing before Judge Okrent under these circumstances because he considered and acted upon information received ex parte.

Receipt of ex parte communication does not automatically require recusal as a matter of law. Recusal is required where ex parte communication reveals or implies a bias toward one party or shows that the judge's future rulings in the case would be affected. State v. Davis, 175 Wn.2d 287, 307-08, 290 P.3d 43 (2012), cert. denied, 134 S. Ct. 62 (2013). Sherman is an illustrative case. In Sherman, the University of Washington had terminated a doctor from a residency program. The trial judge directed his extern to call the Washington Monitored Treatment Program (WMTP) for general information to enable him to understand and resolve a discovery dispute over documents that he was reviewing in camera. When the parties discovered the ex parte communication, they immediately moved for recusal. The judge refused. Sherman appealed. The Washington Supreme Court held that the judge's violation of the rule against ex

parte communications required recusal. "By contacting the WMTP for information about the monitoring process for chemically dependent physicians, the trial judge may have inadvertently obtained information critical to a central issue on remand, namely, whether Dr. Sherman's continued participation in the WMTP is a reasonable accommodation of his chemical dependency. Given that fact, a reasonable person might question his impartiality." Sherman, 128 Wn.2d at 206. A similar result was reached in State v. Romano, 34 Wn. App. 567, 662 P.2d 406 (1983). In Romano, the trial judge called at least two friends of the defendant to verify the income information the defendant testified to for the purposes of sentencing and restitution. Because the ex parte contact created the appearance of partiality and "clouded the proceeding," the sentencing order was reversed and remanded for resentencing by another judge. Romano, 34 Wn. App. at 569.

A case where recusal was not required is State v. Davis, 175 Wn.2d 287, 290 P.3d 43 (2012). In Davis, the trial judge asked a prosecutor he saw in the courthouse hallway to prepare a new scheduling order, approve it, and give defense counsel a copy for signature. Davis, 175 Wn.2d at 304-05. Defense counsel moved that the trial judge recuse himself based on the alleged improper contact. Davis, 175 Wn.2d at 305. The trial judge refused to recuse himself. Davis appealed. The Supreme Court concluded that nothing in the judge's ex parte communication revealed or implied a bias toward one party or that his future rulings in the case would be affected.

> The decision to accelerate trial, which the trial judge believed was purely ministerial, was made well before the communication

7

occurred. Furthermore, the judge did not discuss any substantive issue during the communication. While Davis correctly points out that former Canon 3(A)(4) does not require the communication to be substantive for a violation to occur, the content of the communication is key in evaluating whether the judge appears partial for purposes of the former Canon 3(D).

Davis, 175 Wn.2d at 307-08.

The present case is like Davis, not like Sherman or Romano. Judge Okrent did not seek out information about the case, and the mislabeled "Agreed Order" did not provide him with information. We conclude that Judge Okrent did not abuse his discretion in refusing to recuse himself on the basis of the ex parte communication.

However, Wiggin supports his request for remand and rehearing before a different judge with the additional argument that Judge Okrent denied him the statutory right of allocution. A trial court must allow allocution during the sentencing hearing prior to the imposition of sentence. RCW 9.94A.110; In re Pers. Restraint of Echeverria, 141 Wn.2d 323, 336, 6 P.3d 573 (2000).

When the right of allocution is inadvertently omitted until after the court has announced the sentence it intends to impose, there is an appearance of unfairness. The remedy is to send the defendant before a different judge for a new sentencing hearing. State v. Aguilar-Rivera, 83 Wn. App. 199, 203, 920 P.2d 623 (1996).

A failure to allow allocution cannot be raised for the first time on appeal. State v. Hughes, 154 Wn.2d 118, 153, 110 P.3d 192 (2005), overruled in part on other grounds, Washington v. Recuenco, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006). Judge Okrent did permit Wiggin to allocute at the final

hearing on June 12, 2011, after being prompted by defense counsel. Wiggin's argument is directed at November 11, 2011, the date on which Judge Okrent signed the so-called "Agreed Order" that the State had presented ex parte. As the State has recognized, Wiggin objected that he was not given an opportunity to be heard before Judge Okrent signed that order resentencing Wiggin to 12 months of community custody.

Because there was no actual hearing, Wiggin's objection preserved for appeal his argument that the court failed to allow allocution on November 11, 2011. Wiggin from that point on was in the same position as the defendant in Aguilar-Rivera, where we said, "Although it is clear to us that the sentencing judge sincerely tried to listen to allocution with an open mind, the judge's oversight effectively left Aguilar-Rivera in the difficult position of asking the judge to reconsider an already imposed-sentence." Aguilar-Rivera, 83 Wn. App. at 203. We conclude Wiggin is entitled to the remedy required by Aguilar-Rivera.

Reversed and remanded for resentencing before a different judge.

Becker, J.

WE CONCUR:

9