**FILED**
**DECEMBER 16, 2025**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 40303-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| HECTOR RAMON MUNGUIA-JALOMO, | ) | |
| | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Hector Munguia-Jalomo pleaded guilty to murder in the first degree and was given the bottom-end standard range sentence. He argues he received ineffective assistance of counsel because counsel failed to request a different judge after the trial court announced its bottom-end sentence without first honoring his right of allocution. He asks that we reverse and order resentencing before a different judge. We reject his argument and affirm.

FACTS

*Background*

In 2019, 16-year-old Hector Munguia-Jalomo approached an elderly woman and asked her for money. After she said she did not have any money, Munguia-Jalomo

stabbed her with his knife. Mungia-Jalomo served just over two years in a juvenile rehabilitation facility and was then released.

Within six months, Munguia-Jalomo stabbed and killed his 70-year-old neighbor while the neighbor was riding a lawnmower. There was no prior animosity between the two. Days later, his mother knew something was wrong and drove her son to the sheriff's office to be arrested. When interviewed, he told law enforcement he was hearing voices telling him to commit a murder.

The State charged Munguia-Jalomo with murder in the first degree and alleged an aggravating factor (deliberate cruelty) and a deadly weapon enhancement.

The trial court ordered Munguia-Jalomo admitted to Eastern State Hospital for a 15-day observation and evaluation. Dr. Hannah Walsh interviewed Munguia-Jalomo to obtain a clinical history and collateral information, and diagnosed him with various disorders, including schizophrenia spectrum and psychotic disorder, currently in remission. Dr. Walsh concluded that Munguia-Jalomo's condition did not affect his competency to stand trial.

Munguia-Jalomo obtained a second medical evaluation, including opinions whether he was legally sane at the time he killed his neighbor and possible mitigating factors. He hired Dr. Daniel Lord-Flynn. Dr. Lord-Flynn's report set forth Munguia-Jalomo's psychosocial history from early childhood through his recent psychiatric history

at Eastern State Hospital. It also included a summary of his interview with Munguia-Jalomo. Based on the information obtained, Dr. Lord-Flynn also diagnosed Munguia-Jalomo with schizophrenia.

The report notes that Munguia-Jalomo's hallucinations began in his middle teen years, and they often commanded him to hurt or kill people. Dr. Lord-Flynn believed that the impact of Munguia-Jalomo's impairments were such that

> his functional abilities and level of maturity was far below that which would have been expected for a person at his age of 19 at the time of his crime. His emotional and behavioral maturity levels were similarly well below his chronological age. It is my opinion that these circumstances should also be given consideration with regard to Mr. Munguia-Jalomo's capacities in association with his current charges. It is anticipated that the psychotropic medications and other mental health treatment he is beginning to receive is already having a positive impact on his development and character. A number of treatment resources particularly including psychotropic medications and treatment groups to enhance his social skill development while in custody will continue to result in improvements of his maturity levels and improve his decision making. These factors would enhance his potential for successful rehabilitation while in corrections settings and should be given consideration with regard to Mr. Munguia-Jalomo's sentencing.

Clerk's Papers at 65.

In his report, Dr. Lord-Flynn concluded that Munguia-Jalomo was legally sane at the time of the offense. Soon after this evaluation and report, Munguia-Jalomo pleaded guilty to first degree murder.

*Sentencing Hearing*

According to his offender score, Munguia-Jalomo's standard range sentence was 271-361 months. The State presented two heartfelt written statements, one from the victim's brother and the other from the victim's sister. The State asked the trial court to sentence Munguia-Jalomo to a top-end sentence of 361 months. The State's recommendation was based on the randomness of the crime, and its belief that Munguia-Jalomo would always be a danger to the community because of his history of unprovoked attacks, especially considering the short time between his release from juvenile rehabilitation and killing his neighbor.

Munguia-Jalomo asked the trial court to sentence him to 144 months, an exceptional sentence below the standard range. Defense counsel emphasized her client's young age, his immaturity, and his undiagnosed schizophrenia at the time of the offense. In further support, counsel referenced Mungia-Jalomo's motion in support of a sentence below the standard range, a letter written by his mother, and Dr. Lord-Flynn's report. The trial court acknowledged it had read those materials.

Defense counsel also discussed the stigma attached to mental health and the difficulty for young individuals to accept they have a mental health issue and the need to take medications. Defense counsel ended by stating she did not have any further witnesses, other than Munguia-Jalomo, who had prepared a short statement.

The trial court began its remarks by discussing its concerns with the case, including its worries about public safety based on Munguia-Jalomo's prior and similar unprovoked stabbing and the relatively short time after serving that sentence before committing the current offense. The trial court also acknowledged Munguia-Jalomo's youthfulness and schizophrenia but believed that a substantial sentence was appropriate to protect the community. The court noted it might have sentenced Munguia-Jalomo below the standard range but for his past assault of the elderly woman and the serious risk he posed to the community.

The trial court then stated, "[t]he Court is going to impose a bottom of the range sentence on this of 271 months." Rep. of Proc. (Mar. 15, 2024) (RP) at 27. It was then the court realized its error:

> THE COURT: Mr. Jalomo, I'm sorry. I did not give you a chance, if you wish, to address me before I impose sentence against you. I will indicate on the record I will reconsider what my sentence would be if you say something during that period of time, if you wish, that would change my mind as far as the sentence that I would be issuing at this point, but you do have a right to address me and tell me anything you wish before I impose sentence. Also, if you do not wish to do that though, you do have the right to right to remain silent.
> Is there anything that you wish to say before I impose sentence?
> THE DEFENDANT: Yes. Your Honor, I want to say to the victim's family that I'm sorry. I did not have any type of hate towards him. Ever since I've been locked up I'm always thinking back to that day, and I regretted it. I blame myself for the death of your family member. I'm sorry my actions took his life.

5

When I was at home I was going through hallucination problems. I was seeing and hearing voices in my head that other people couldn't see or hear. I turned myself in because that's the only way I've lived before I committed murder.

I know I've caused pain in your family, and I'm so sorry for that. I wish I could bring him back. I hope by me being locked up can make your family feel better. I believe in God, and I hope He can forgive me for my sin. I hope the family can forgive me for that, and I hope that the family can believe me when I say I'm truly sorry.

. . . .

THE COURT: Thank you very much for that. Those are good words, and the Court is considering those. It doesn't really change my mind as far as what I believe is the appropriate sentence on this because although I think I already had in mind that I don't think this is something that without your youthfulness and without the mental health factoring into this, this is something that you would most likely have done. . . .

But I still feel that based on what has occurred and the prior offense involving the stabbing, and then this offense shortly thereafter, that you do pose a serious risk of danger in the form of bodily harm, severe bodily harm to others . . . .

RP at 29-31.

The trial court declined to alter its earlier decision and imposed a bottom-end sentence of 271 months. Munguia-Jalomo appeals to this court.

ANALYSIS

Munguia-Jalomo argues he received ineffective assistance of counsel because his counsel failed to request sentencing in front of a different judge even though he had that right. This court reviews a claim of ineffective assistance of counsel de novo. *State v.*

6

*Backemeyer*, 5 Wn. App. 2d 841, 848, 428 P.3d 366 (2018). To evaluate Munguia-Jalomo's claim, we first must place it in context by discussing the right of allocution.

A defendant has the right of allocution. *In re Pers. Restraint of Echeverria*, 141 Wn.2d 323, 336, 6 P.3d 573 (2000); RCW 9.94A.500(1). Before announcing its sentence, the trial court must first ask the defendant if they wish to say anything to the court in mitigation. *Echeverria*, 141 Wn.2d at 336-37. If the "right of allocution is inadvertently omitted until after the court has orally announced the sentence it intends to impose, the remedy is to send the defendant before a different judge for a new sentencing hearing." *State v. Aguilar-Rivera*, 83 Wn. App. 199, 203, 920 P.2d 623 (1996). This is true even if the court is amenable to altering the sentence after hearing a defendant's allocution. *State v. Crider*, 78 Wn. App. 849, 861, 899 P.2d 24 (1995).

Having placed Munguia-Jalomo's ineffective assistance claim in context, we next discuss whether defense counsel's failure to object and her choice to allow the trial judge to sentence Munguia-Jalomo constitutes ineffective assistance of counsel.

To demonstrate ineffective assistance of counsel, Munguia-Jalomo must show that "(1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the

7

proceeding would have been different." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If one prong of the test fails, we need not address the other prong. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

*Defense counsel's performance was not deficient*

Munguia-Jalomo fails to explain why defense counsel's performance was deficient. Rather, he implies that because he had the right to be sentenced by a different judge, his counsel was deficient for not enforcing this right. We are unpersuaded.

The defendant bears the burden of establishing deficient performance. *McFarland*, 127 Wn.2d at 335. Our scrutiny of defense counsel's performance is highly deferential, and we begin our analysis with a strong presumption that counsel's performance was effective. *Id.* A defendant claiming ineffective assistance of counsel must show the absence of a legitimate strategic or tactical reason for counsel's act or omission. *Id.* at 336.

Here, Munguia-Jalomo faced a standard range sentence of 271-361 months. The State requested a top-end sentence of 361 months, presented heartfelt statements from the victim's siblings, and presented a strong community-safety argument for not imposing a low-end sentence, much less an exceptional sentence below the standard range. Defense counsel adeptly chose not to interrupt the trial court's preliminary comments and waited

8

until it announced its sentence. The trial court quickly caught its error and assured

Munguia-Jalomo it would consider what he had to say and perhaps change its decision.

At this point, defense counsel faced a decision of whether to now object or allow

Munguia-Jalomo to exercise his right of allocution and be properly sentenced. Defense

counsel decided the risk of objecting was too high. The trial court's announced sentence

of 271 months was now the ceiling, and there was a chance, however small, that it might

give a lesser sentence. But a different judge might agree with the State and impose a top-

end sentence of 361 months. The phrase, "A bird in the hand is worth two in the bush,"

rings true. We conclude that defense counsel's tactics were legitimate.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____       _____
Staab, J.                                 Birk, J.[1]

---

[1] The Honorable Ian S. Birk is a Court of Appeals, Division One, judge sitting in Division Three pursuant to CAR 21(a).