[No. 8775-1-III. Division Three. November 15, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN GEORGE NUSS, *Petitioner.*

736

*Gerald Moberg, Harry Ries,* and *Ries & Kenison,* for petitioner.

*Paul Klasen, Prosecuting Attorney,* and *Peter G. Wales, Deputy,* for respondent.

MUNSON, J.—John George Nuss was granted discretionary review of the trial court's order (1) compelling him to submit to an independent psychiatric examination; (2) denying presence of counsel at the court ordered psychiatric examination; (3) allowing the State to depose his experts; and (4) requiring him to deliver to the State summaries of reports made by his experts based on psychiatric examinations. We affirm in part and reverse in part.

On December 17, 1986, Mr. Nuss was charged with first degree murder. He pleaded not guilty and, in response to the State's omnibus application, indicated he would assert a claim of diminished capacity listing two experts, Dr. Paul Copeland and Dr. Mark Mays, who would testify regarding that claim.

The court ordered Mr. Nuss to comply with the State's omnibus application by February 27, 1987, which had asked for copies of all medical reports. On April 7, in response to the State's motion to compel discovery, the court again entered an order requiring Mr. Nuss to provide written reports of the examinations done by Drs. Copeland and Mays. On June 5, Mr. Nuss moved the court to reconsider its April 7 order because of the expense of requiring the doctors to prepare written reports. The court granted the motion and orally ordered Mr. Nuss to provide the State with written summaries of the oral statements of Drs. Copeland and Mays.

On July 9, the State moved the court for an order compelling Mr. Nuss' attorney, Jerry Moberg, to show cause why he should not be found in contempt for failing to comply with the court's orders of February 17, April 7, and June 5. At the hearing on July 17, Mr. Nuss' other attorney, Harry Ries, responded that he would provide a statement of the doctors' diagnoses, but would not disclose the statements made by Mr. Nuss upon which the diagnoses are based. The court stated that the State would disclose the summaries of the doctors' reports only to an expert it would call at trial. The court then entered a written order compelling Mr. Nuss' counsel to provide to the State, on or before July 24, 1987, "a full and comprehensive summary of any reports, being either oral or written," they had received from Drs. Copeland and Mays concerning examinations done on Mr. Nuss.

On July 24, Mr. Moberg delivered the summaries to the State, but made it clear Mr. Nuss was not waiving his right to challenge the court's order. The court also granted the

State's motion, ordering Mr. Nuss to submit to a psychiatric examination at Eastern State Hospital. The court added that Mr. Nuss was entitled to have an expert present during the examination, but deleted a provision in the order allowing Mr. Nuss' attorney to be present. The court further stated that any incriminating statement that Mr. Nuss makes during the examination would be considered involuntary. Additionally, the court ordered the State be allowed to depose Drs. Copeland and Mays.

Mr. Nuss sought discretionary review. The Commissioner granted a stay of trial court proceedings pending a determination of whether a review would be accepted. On December 11, the Commissioner granted discretionary review.

This case involves several issues of first impression. First, Mr. Nuss contends the court erred in ordering him to submit to an independent psychiatric examination. He argues that RCW 10.77.060(1)[1] is applicable only if the defendant pleads not guilty by reason of insanity or the court has doubts about his or her competency to stand trial. Thus, the statute is inapplicable when a defendant claims diminished capacity.

■ A claim of diminished capacity is available if the defendant was unable to form the "specific intent" required to commit the crime charged. *State v. Poulsen,* 45 Wn. App. 706, 708, 726 P.2d 1036 (1986). *See generally* Trowbridge, *Competency & Criminal Responsibility in Washington,* 21 Gonz. L. Rev. 691 (1985–1986). It is relevant to the elements or degrees of certain crimes involving intent. *State v. Ferrick,* 81 Wn.2d 942, 506 P.2d 860, *cert. denied sub nom. Gustav v. Washington,* 414 U.S. 1094 (1973);

---

[1]RCW 10.77.060(1) states in pertinent part:

"Whenever a defendant has pleaded not guilty by reason of insanity, or there is reason to doubt his competency, the court on its own motion or on the motion of any party shall either appoint or request the secretary to designate at least two qualified experts or professional persons, one of whom shall be approved by the prosecuting attorney, to examine and report upon the mental condition of the defendant."

*State v. Edmon,* 28 Wn. App. 98, 103–04, 621 P.2d 1310, *review denied,* 95 Wn.2d 1019 (1981). As Mr. Nuss points out, there are differences between the insanity defense and the claim of diminished capacity. A claim of diminished capacity merely negates one of the elements of the alleged crime; it is not an affirmative defense.

These differences, however, do not provide a compelling reason for allowing a court ordered psychiatric examination when a defendant pleads insanity, but prohibiting such an examination when he or she claims diminished capacity. *See State v. Brewton,* 49 Wn. App. 589, 744 P.2d 646 (1987) (there is no difference between the insanity and diminished capacity defenses for purposes of determining whether the disclosure of medical records violates the attorney–client, physician–patient, and Fifth Amendment privileges).

Furthermore, CrR 4.7(b)(2) provides the court with authority to order a psychiatric examination:

> Notwithstanding the initiation of judicial proceedings, and subject to constitutional limitations, the court on motion of the prosecuting attorney or the defendant, may require or allow the defendant to:
>
> . . .
>
> (viii) submit to a reasonable physical, medical, or psychiatric inspection or examination;

Mr. Nuss does not address CrR 4.7(b)(2) in his brief. Likewise, CrR 4.7(g), which allows court ordered disclosure of physical or mental examination results, is applicable, subject to constitutional limitations. The court did not err in ordering him to submit to an independent psychiatric examination.

Second, Mr. Nuss contends he has a right to have his attorney present and to refuse to answer incriminating questions during the court ordered examination. He relies on RCW 10.77.020[2] which provides in part:

---

[2]Although Mr. Nuss contends RCW 10.77 is not applicable to diminished capacity, in this instance he cites it as authority for his position.

(1) At any and all stages of the proceedings pursuant to this chapter, any person subject to the provisions of this chapter shall be entitled to the assistance of counsel, and if the person is indigent the court shall appoint counsel to assist him. . . .

. . .

(4) Any time the defendant is being examined by court appointed experts or professional persons pursuant to the provisions of this chapter, he shall be entitled to have his attorney present. The defendant may refuse to answer any question if he believes his answers may tend to incriminate him or form links leading to evidence of an incriminating nature.

We apply portions of this statute by analogy to a claim of diminished capacity.

The United States Supreme Court has held that a defendant has a constitutional right to assistance of counsel at all "critical stages" of the prosecution. *Gilbert v. California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951 (1967). However, the Court has not addressed the specific issue of the right to counsel at court ordered examinations. Other courts are divided. *See* Annot., *Right of Accused in Criminal Prosecution to Presence of Counsel at Court–Appointed or –Approved Psychiatric Examination,* 3 A.L.R.4th 910, 915 (1981). Some courts have held a court ordered psychiatric examination constitutes a "critical stage" of the prosecution and held a defendant has a constitutional right to counsel. *See, e.g., Houston v. State,* 602 P.2d 784 (Alaska 1979). Other courts have held a defendant is not entitled to counsel at a psychiatric examination because counsel would limit the effectiveness of the examination. *See, e.g., Hollis v. Smith,* 571 F.2d 685 (2d Cir. 1978). Still other courts have held the trial court may in its discretion allow counsel to be present if the examining psychiatrist has no objection. *See, e.g., People v. Martin,* 386 Mich. 407, 192 N.W.2d 215 (1971), *cert. denied sub nom. Lewis v. Michigan,* 408 U.S. 929 (1972).

*State v. Escoto,* 108 Wn.2d 1, 735 P.2d 1310 (1987), cited by Mr. Nuss, is not applicable. There the trial court

allowed counsel to be present at a psychological evaluation of a juvenile for sentencing purposes. This is a different issue than presented here. The State cites *United States v. Halbert,* 712 F.2d 388 (9th Cir. 1983), *cert. denied,* 465 U.S. 1005 (1984), where Mr. Halbert argued that because he claimed diminished capacity, rather than insanity, his statements during a court ordered examination were not admissible since they relate to guilt rather than insanity. The court rejected this argument and held that Federal Rule of Criminal Procedure 12.2, which prohibited the use of a defendant's statements on the issue of guilt during an examination, was not designed to cover statements relating to a defendant's mental capacity. The court added, at page 390:

> Halbert's argument is contrary to the conceptual under-pinnings of Rule 12.2: "'[W]hen the defendant has raised the issue of insanity and the psychiatrist is called to testify on this question, the defendant must not be allowed to muzzle him at his option.'" [*United States v. Madrid,* 673 F.2d 1114, 1120–21 (10th Cir. 1982) (quoting *United States v. Julian,* 469 F.2d 371, 376 (10th Cir. 1972))]. This logic applies equally well to a situation in which the defendant raises the issue of "diminished capacity."

■ We hold a court ordered psychiatric examination is a "critical stage" in a criminal prosecution, which gives rise to the right to counsel. Where the examination is in response to a plea of insanity or a claim of diminished capacity, however, the right to counsel is limited. Counsel may be present, but his attendance is strictly as an observer rather than an active participant. This precaution allows for an unhampered psychiatric examination and provides counsel with a firsthand observation necessary for effective cross examination. It is similar to counsel's presence at a police lineup. *United States v. Crouch,* 478 F. Supp. 867 (E.D. Cal. 1979); *see also* 13 R. Ferguson, Wash. Prac., *Criminal Practice and Procedure* § 2810, at 79 (1984).

We do not, however, apply the Fifth Amendment analysis of RCW 10.77.020(4) by analogy. Though counsel has a limited right to be present at the court ordered psychiatric

examination, his client may not refuse to answer incriminating questions. Where the defense of insanity is raised, the defendant waives his privilege against self–incrimination. *See State v. Jones,* 99 Wn.2d 735, 749, 664 P.2d 1216 (1983). Based upon our analysis above, the privilege is also waived where the defendant makes a claim of diminished capacity. *See State v. Jones,* 111 Wn.2d 239, 759 P.2d 1183 (1988).

■ Third, Mr. Nuss also contends the court erred in its order allowing the State to depose his experts based upon the physician–patient privilege. Former RCW 5.60.060(4); 18.83.110. He contends he does not waive his physician–patient and attorney–client privileges until he chooses at trial to have his experts testify. He asserts the State should not be allowed to depose his experts until that time.[3] The State concedes Mr. Nuss can withdraw his diminished capacity defense, not introduce expert testimony as to his mental state, and reclaim the attorney–client, physician–patient, and Fifth Amendment privileges. *See State v. Jones,* 99 Wn.2d at 750; *State v. Pam,* 98 Wn.2d 748, 764 n.7, 659 P.2d 454 (1983) (Utter, J., concurring). However, the State should not have to wait until trial to depose Mr. Nuss' experts. Nor should a jury trial be interrupted to allow the State time to obtain expert testimony once a defendant decides to impose this issue. We find no error in allowing the State to depose the experts.

Fourth, Mr. Nuss contends the court erred in ordering him to provide a full and comprehensive summary of examination reports made by his experts. *State v. Brewton, supra,* controls this issue. There, Mr. Brewton indicated before trial he would raise insanity and diminished capacity defenses. After the court granted the State's request for

---

[3]Mr. Nuss' attorney has declined to advise the prosecutor, the trial court and this court the basis for his client's contention of diminished capacity, *i.e.,* intoxication, drugs, trauma, etc. Trial by ambush has been abandoned in this state, at least so far as a basic outline of an accused's defense. CrR 4.6, 4.7. If counsel is unwilling to relate that information, conformance with the rule of discovery in criminal cases will be required. CrR 4.7(h)(7)(ii).

copies of his medical records, he withdrew the insanity defense and sought return of the records. The court refused. He appealed contending the disclosure of the records violated his physician–patient and Fifth Amendment privileges.

We agree with *Brewton*, at 591, that a defendant who raises the insanity defense waives his attorney–client, physician–patient, and Fifth Amendment privileges. Here, Mr. Nuss raised the issue of his mental condition by claiming diminished capacity. Under *Brewton*, the State is entitled to all of Mr. Nuss' medical records. Thus, requiring him to provide full and comprehensive summaries of the records of his psychiatric examinations does not violate the attorney–client privilege. We note, however, that once the State is provided with the opportunity to depose Mr. Nuss' experts, the need for counsel to furnish summaries will have been obviated.

Except for that portion of the order denying presence of counsel at the court ordered psychiatric examination, the order is affirmed.

THOMPSON, C.J., and GREEN, J., concur.

Review denied by Supreme Court March 14, 1989.