480

[Nos. 16802-6-III; 19045-5-III.   Division Three.   September 7, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. BUDDY D.
COCHRAN, *Appellant*.
*In the Matter of the Personal Restraint of* BUDDY D.
COCHRAN, *Petitioner*.

*Buddy D. Cochran*, pro se.

*Keith W. Howard* (of *Barker & Howard*), for appellant/petitioner.

*Gary A. Riesen, Prosecuting Attorney*, for respondent.

BROWN, A.C.J. — After raising a diminished capacity defense, Buddy Cochran was convicted of attempted first degree murder. Mr. Cochran's appeal presents the novel issue of whether the trial court erred when allowing the State to present rebuttal evidence on the issue of diminished capacity even though defense counsel was not present during the State's entire mental status evaluation process. We decide his right to counsel during this critical stage of proceeding was not violated. We also reject claimed error in limiting evidence of alleged witness drug use and child abuse. In the unpublished portion of this opinion, we decide no abuse of discretion occurred when denying a third continuance. Similarly, we reject all pro se contentions and the consolidated personal restraint petition arguments related to ineffective assistance of counsel. Accordingly, we affirm.

## FACTS

In 1996, after five years of marriage, Buddy and Cindy Cochran separated. Mrs. Cochran moved in with Jerry Frisk. On January 22, 1997, while on his way to work, Mr. Frisk was signaled to stop by Mr. Cochran. Mr. Cochran approached Mr. Frisk's truck, told Mr. Frisk to stay away from Mrs. Cochran, and then stabbed Mr. Frisk.

Mr. Cochran was charged with one count of attempted first degree murder. Mr. Cochran raised a diminished capacity defense. The court appointed a forensic psychologist, Dennis Sheppard, Ph.D., as a defense expert. At the State's request, the court ordered Mr. Cochran to submit to a mental status examination at Eastern State Hospital. Mr. Cochran was evaluated at Eastern from April 22 to May 2, 1997. Mr. Cochran's counsel was present at the two clinical interviews conducted during the evaluation period, but not at other times.

During pretrial, Mr. Cochran's counsel moved unsuccessfully to dismiss or, alternatively, suppress on the grounds that he was not present at all times during the evaluation process when information bearing on the State expert's opinions was gathered. The State moved successfully to exclude testimony regarding alleged drug abuse by Mrs. Cochran, and Mr. Frisk's claimed child neglect by Mr. Cochran. Immediately before trial, Mr. Cochran was denied a third continuance.

At trial, Dr. Sheppard opined that Mr. Cochran's ability to act with intent was impaired at the time of the stabbing because he was suffering from Vietnam post-traumatic stress disorder and sleep deprivation. In rebuttal, the State called Dr. Timm Fredrickson, a staff psychologist at Eastern State Hospital, who opined based upon his entire evaluation that Mr. Cochran had the capacity to formulate the necessary intent to kill Mr. Frisk.

The jury returned a guilty verdict and a special deadly weapon verdict. The court decided the standard range sentence was 187.5 to 249.75 months, plus a 24-month deadly weapon enhancement. The court sentenced Mr. Cochran to 273.75 months.

Mr. Cochran's appeal is consolidated with his personal restraint petition (PRP).

## ANALYSIS

### A. Diminished Capacity Rebuttal

The issue is whether the trial court erred when allowing the State to present rebuttal evidence from Dr. Fredrickson on the issue of diminished capacity and concluding the evaluation process used by the State to gather its rebuttal evidence did not violate Mr. Cochran's right to counsel.

When a defendant places his or her mental status in issue by claiming diminished capacity, the State may require the

defendant to submit to an expert evaluation. *State v. Hutchinson*, 135 Wn.2d 863, 878, 959 P.2d 1061 (1998) (*Hutchinson* II), *cert. denied*, 525 U.S. 1157 (1999); *see* CrR 4.7(b)(2)(viii). The court is the gatekeeper to prevent admission of incriminating statements that may be gathered during the required evaluation. *Hutchinson* II, 135 Wn.2d at 878. A statement is not incriminating merely because it may support a conclusion that the defendant was capable of forming the necessary criminal mental state. *Id.* The evaluation is a "critical stage" in a criminal prosecution that gives rise to a *limited* right to counsel. *State v. Nuss*, 52 Wn. App. 735, 741, 763 P.2d 1249 (1988).

Mr. Cochran incorrectly contends his right to counsel was violated because counsel was not with him continuously for the duration of his evaluation at Eastern. Mr. Cochran argues Dr. Fredrickson's opinion was impermissibly based in part on information gathered while his trial counsel was absent. However, the focus under *Hutchinson* II is on impermissibly used incriminating statements. None are alleged here. At trial, Dr. Fredrickson merely opined that Mr. Cochran had the capacity to formulate the intent to kill Mr. Frisk without any reference to or claimed use of incriminating statements made by Mr. Cochran to him. Dr. Fredrickson's opinion was based on the foundation facts gleaned from his clinical interviews with Mr. Cochran while Mr. Cochran's counsel was present, plus ward charts, progress notes, and police reports.

A defendant has a limited right to counsel during a mental status evaluation:

> Where the examination is in response to a plea of insanity or a claim of diminished capacity, however, the right to counsel is limited. Counsel may be present, but his attendance is strictly as an observer rather than an active participant. This precaution allows for an unhampered psychiatric examination and provides counsel with a firsthand observation necessary for effective cross examination.

*Nuss*, 52 Wn. App. at 741. Counsel may not inhibit the examination. *State v. Hutchinson*, 111 Wn.2d 872, 884, 766

P.2d 447 (1989) (*Hutchinson I*), *cert. denied*, 525 U.S. 1157 (1999). The limited right reflects the notion that an attorney's presence during the psychiatric interview contributes little and might seriously disrupt the examination. *Estelle v. Smith*, 451 U.S. 454, 470 n.14, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981) (citing *Smith v. Estelle*, 602 F.2d 694, 708 (5th Cir. 1979), *aff'd*, 451 U.S. 454 (1981)). Again, as discussed above, the constitutional threat is against self-incrimination, a right not challenged here.

To require constant presence by counsel for the entire evaluation period or when supporting reference material is collected or examined by the State's expert is clearly impractical. Moreover, experts commonly refer to facts collected outside their presence in forming opinions, and the facts need not be admissible. ER 703. For example, Dr. Fredrickson referred to police reports as part of the foundation facts for his opinion.

In sum, during Mr. Cochran's stay, his counsel was present for the two clinical interviews. Mr. Cochran had access to a telephone to contact counsel. Mr. Cochran and his trial counsel were informed of the procedures utilized at Eastern. Mr. Cochran was given a form explaining his rights, including the right to refuse to answer any questions that could incriminate him and the right to have his attorney present. No record shows that Mr. Cochran actually made any additional request for his attorney's presence. Under these circumstances, we conclude Mr. Cochran was not denied his limited right to counsel by counsel's absence during the entire evaluation process.

While the ward notes and progress charts were not available to either side until the trial, counsel did have the opportunity to read through them before Dr. Fredrickson's cross-examination. Counsel did not request any delay or recess for further preparation. Logically, little useful cross-examination about the ward notes and progress charts was likely from Dr. Fredrickson who did not prepare them, but merely referred to them in support of his opinions. Significantly, counsel was present when Dr. Fredrickson actually

interviewed Mr. Cochran allowing him to prepare for cross-examination.

■ In sum, expert witnesses may rely on the challenged information as foundation for opinion testimony even though the facts or data may not be separately admissible in evidence. *State v. Russell*, 125 Wn.2d 24, 73-75, 882 P.2d 747 (1994) (construing ER 703 and ER 705); *see also State v. Ellis*, 136 Wn.2d 498, 522-23, 963 P.2d 843 (1998) (admissibility of expert testimony regarding diminished capacity determined under the rules of evidence; ER 702). As Mr. Cochran has not established any critical impairment of his limited constitutional right, we do not address his equal protection arguments based upon his indigent status.

## B. Motion in Limine

The issue is whether the trial court erred by abusing its discretion when granting the State's motion in limine and concluding evidence of alleged witness drug abuse or child abuse was irrelevant to the material issues before the court.

■ This court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). Judicial discretion is abused if the court's decision is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

■ "Evidence which is not relevant is not admissible." ER 402. Evidence is relevant and thus probative if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. There must be a logical nexus between the evidence and the fact to be established. *State v. Burkins*, 94 Wn. App. 677, 692, 973 P.2d 15, *review denied*, 138 Wn.2d 1014 (1999).

■ ■ In the context of impeachment, evidence of a witness's prior misconduct is admissible only if it is proba-

tive of the witness's character for truthfulness under ER 608. *State v. Stockton*, 91 Wn. App. 35, 42, 955 P.2d 805 (1998). Drug possession and use are not probative of truthfulness because they have little to do with a witness's credibility. *Id.* at 42. Under ER 609, a prior " 'felony conviction . . . for possession of drugs . . . ha[s] little to do with a defendant's credibility as a witness.' " *State v. Hardy*, 133 Wn.2d 701, 709, 946 P.2d 1175 (1997) (quoting *State v. Jones*, 101 Wn.2d 113, 122, 677 P.2d 131 (1984), *overruled on other grounds by State v. Brown*, 113 Wn.2d 520, 554, 782 P.2d 1013, 787 P.2d 906, 80 A.L.R.4th 989 (1989)).

■ The credibility of Mr. Frisk and Mrs. Cochran is not in issue. The assault is not contested. Therefore, the impeachment value, if any, of alleged drug use or child abuse is irrelevant. Moreover, as pointed out in *Hardy*, even a conviction for a drug offense has little impeachment value.

■ Next, we ask what independent probative value exists, if any, for admitting alleged witness drug usage or child abuse on the remaining issue of diminished capacity.

"Diminished capacity arises out of a mental disorder, usually not amounting to insanity, that is demonstrated to have a specific effect on one's capacity to achieve the level of culpability required for a given crime." As a defense, diminished capacity allows a defendant to negate the culpable mental state element of a crime "by showing that a given mental disorder had a specific effect by which his ability to entertain that mental state was diminished."

*State v. Stumpf*, 64 Wn. App. 522, 524-25, 827 P.2d 294 (1992) (quoting *State v. Gough*, 53 Wn. App. 619, 622, 768 P.2d 1028 (1989)) (citations omitted). Here, the evidence lacked the requisite logical nexus to the mental impairment Mr. Cochran was seeking to establish. His alleged post-traumatic stress disorder stemmed from his Vietnam experiences and sleep deprivation, not the alleged witness conduct. The court did not err.

Affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder, having no precedential value, shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

SWEENEY and SCHULTHEIS, JJ., concur.

Review denied at 143 Wn.2d 1004 (2001).