47 P.3d 149 (2002)
111 Wash.App. 851
STATE of Washington, Respondent,
v.
Howard Ralph BLAKELY, Appellant.
No. 19545-7-III.
Court of Appeals of Washington, Division 3, Panel Six.
May 23, 2002.
*151 Douglas D. Phelps, Scott R. Staab, Marletta Giles-Ward, Phelps & Associates, Spokane, for Appellant.
John D. Knodell, III, Ephrata, for Respondent.
SCHULTHEIS, J.
Howard Ralph Blakely pleaded guilty to one count of second degree kidnapping and one count of second degree assault. Consistent with the plea agreement, the State recommended the high end of the standard range. After a sentencing evidentiary hearing, where the State presented testimony from the victims and mental health professionals, the trial court imposed an exceptional sentence upward. Mr. Blakely now appeals, contending the State violated the plea agreement by advocating for an exceptional sentence. He also challenges the constitutionality of the sentence and the sentencing hearing. Pro se, he claims he had ineffective assistance of counsel and alleges various acts of misconduct by the State. Finding no error, we affirm.

FACTS
Mr. Blakely and Yolanda Blakely were married in 1973. They raised three children: two daughters and their youngest son, Ralphy. The family acquired considerable real property during the marriage, including a home, ranch, and development property in Montana; a home and orchard in Grant County; a lake home; and rental properties. In order to protect this property from creditors and tax liability, they created a trust known as the Blakely Farms Trust.
*152 In 1995, Ms. Blakely moved to Spokane from Montana, filed for divorce, and obtained a restraining order against Mr. Blakely. One year later, the trustee for the Blakely Farms Trust filed a petition for a declaration of the validity of the trust and for an accounting. In December 1997, the Spokane divorce court authorized Ms. Blakely to move into the Grant County home and to operate the orchard. Her son Ralphy joined her there in June 1998.
On the afternoon of October 26, 1998, about two weeks before the trust litigation was set to begin, Mr. Blakely surprised Ms. Blakely as she walked back from her mailbox. He pushed her to the ground, wrapped duct tape around her mouth and head, and taped her wrists together. Apparently very angry, he told Ms. Blakely he wanted her to dismiss the dissolution and trust proceedings. Noting that O.J. Simpson had gotten away with what he did, Mr. Blakely warned his wife to cooperate or he would kill her and Ralphy. He told her he had many guns, ammunition, and several knives. He then forced her to climb into his pickup canopy, where he locked her in a coffin-like plywood box that he had constructed. The box was about the same width and length as Ms. Blakely's body and had air holes drilled into each end. Ms. Blakely heard her husband loading items from the house into the truck. On several occasions, he opened the lid of the box, pressed a knife blade to Ms. Blakely's neck or nose, and demanded to know where various items could be found. As night fell and it became cold, Mr. Blakely put a quilt over his wife in the box.
Ralphy, age 13, arrived home from football practice after dark. His father met him in the driveway, told him his mother was in great danger, and told him not to cause any trouble. They walked to the pickup, where Ralphy heard his mother yelling from the box. Mr. Blakely ordered Ralphy to drive his mother's car and warned him that if he "`tried anything,'" Mr. Blakely would shoot the box with a shotgun. Clerk's Papers (CP) at 626.
Mr. Blakely drove the pickup out of the orchard and headed east, with Ralphy following in his mother's car. Eventually they stopped at a truck stop on the outskirts of Moses Lake for gas. When Ralphy and his father entered the truck stop to pay, Ralphy shouted, "`Call 9-1-1! Help us! He kidnapped us! He has my mom in a box!'" CP at 627. Mr. Blakely tried to drag Ralphy to the car, but truckers shouted to him to leave the boy alone. He released Ralphy, ran to the pickup, and took off. Ralphy jumped on the pickup bumper and tried to release his mother from the box, but was knocked off when Mr. Blakely accelerated. Ralphy was left behind at the truck stop.
During the subsequent trip to Montana, Mr. Blakely removed the tape from his wife's head and let her sit in the front seat so she could tell any police who stopped them that she was accompanying him of her own free will. He was angry because "`Ralphy ruined everything!'" CP at 627. On occasion, Mr. Blakely forced Ms. Blakely back into the box. In all, she was locked in the box for over four hours.
They eventually arrived at the house of Mary Gillespie, who lived close to their Montana home. Mr. Blakely let his wife enter Ms. Gillespie's house while he called their older daughter and demanded that she stop the divorce and trust litigation. He also called a stockbroker, received stock quotations, and gave the broker sell orders. Meanwhile, Ms. Blakely and Ms. Gillespie surreptitiously planned to call for help. When Mr. Blakely sent Ms. Gillespie on an errand to a nearby house, she called the police. Officers soon arrived and Mr. Blakely sent his wife out to tell them that she had come to Montana voluntarily. Instead, she reported that she had been kidnapped, and he was arrested without incident.
Mr. Blakely was charged in federal court with two counts of kidnapping. These charges were later dismissed and the State filed two charges of first degree kidnapping, each involving domestic violence, in October 1998. He pleaded not guilty, with a defense of insanity or diminished capacity.
Mr. Blakely has been diagnosed at various times since 1972 as suffering from schizophrenia. The trial court in the Blakely Farms Trust litigation held a hearing in February *153 1999 to determine whether the court should appoint a guardian ad litem to represent Mr. Blakely's interests in the trust and dissolution actions. Based on his psychiatric history and a psychologist's recent conclusion that Mr. Blakely suffered "clear mental deficiencies," Def.'s Ex. 2, the civil court appointed a guardian ad litem in early March 1999.
Within days, the State in the criminal action obtained an order for an evaluation at Eastern State Hospital of Mr. Blakely's competency. After reviewing Mr. Blakely's 27-year psychiatric history as well as the results of his current examination, evaluators Dr. Vern Cressey and Dr. Timm Fredrickson concluded that he had high average intelligence, had never been a paranoid schizophrenic, and suffered instead from a severe personality disorder with schizotypal and narcissistic components. Noting his multiple legal difficulties over the years, their report also surmised that Mr. Blakely only sought psychiatric treatment when he was "embroiled in legal issues." CP at 70. On the basis of this evaluation, the criminal trial court entered an order of competency in May 1999.
Because defense counsel continued to have difficulty communicating with Mr. Blakely, the trial court ordered another evaluation in September 1999 to determine whether Mr. Blakely could assist counsel and appreciate the import of the criminal proceedings. The report from this round of evaluations stated that Mr. Blakely began the stay at Eastern with "elective mutism" and "struggl[ed] to find something wrong with himself physically." CP at 291. In the opinion of the evaluators, he was well aware of the court proceedingsincluding the options and consequences of various pleas and he had the capacity to understand and assist in his own defense. Despite the evaluation results, defense counsel demanded a jury trial on the issue of Mr. Blakely's competency to stand trial. Finding that RCW 10.77.090 authorizes a pretrial jury determination of competency, the trial court granted the motion.[1]
The criminal competency trial was held in April 2000. Mr. Blakely's counsel sought to introduce the trust court's order appointing the guardian ad litem. This order included a finding that Mr. Blakely "is not competent at this time [March 1999] to comprehend with understanding and intelligence the significance of the entire legal proceedings and their effect on and relationship to his best interests." Def.'s Ex. 1, at 2. Although the criminal trial court found that the civil court's order was not really an adjudication of incompetence, it decided to allow admission of the order at the competency hearing. Later, when defense counsel objected to the trial court's refusal to instruct the jury that the civil court's order raised a rebuttable presumption of incompetence, the trial court ruled as a matter of law that the order appointing the guardian ad litem did not constitute an adjudication of incompetence. The jury found that Mr. Blakely was competent to stand trial on the criminal charges.
Trial was set for July 2000. On July 18, the court conducted a hearing on a plea agreement. The State offered to amend the charges to one count of second degree domestic violence kidnapping with a deadly weapon enhancement (RCW 9A.40.030(1), 10.99.020, former 9.94A.125 (1983)) and one count of second degree domestic violence assault (RCW 9A.36.021(1)(c), 10.99.020). In exchange for the amended charges and a recommendation for a sentence in the high end of the standard range, Mr. Blakely agreed to an Alford plea of guilty.[2] Although Mr. Blakely complained that he could not think clearly due to the intolerable conditions in his jail cell, the trial court eventually determined that Mr. Blakely understood the charges and the agreement.
*154 At the sentencing hearing two weeks later, Mr. Blakely attempted to withdraw the guilty plea, claiming he was pressured by his doctors and lawyers. Finding that it was not credible that Mr. Blakely was under duress or was misled, the trial court denied the motion to withdraw. The State then told the court the standard range for the kidnapping charge with the deadly weapon enhancement was 49 to 53 months and recommended the high end of that range to run concurrently with a sentence of 12 to 14 months for the assault. Before pronouncing sentence, the trial court asked for Mr. Blakely's comments and asked Ms. Blakely to describe her ordeal during the kidnapping. During her testimony, defense counsel protested that she was giving new information without being under oath. In response, the trial court told her to leave out extraneous details. Ultimately, the trial court rejected the State's recommendation for a standard range sentence and imposed an exceptional sentence of 90 months for the kidnapping, citing the aggravating factors of deliberate cruelty and commission of domestic violence in the presence of a minor child.
In August 2000, Mr. Blakely objected to the exceptional sentence and the trial court continued the matter for an evidentiary hearing. The court asked the State to subpoena Ms. Blakely and other witnesses and admitted it should have held a hearing with witnesses under oath and subject to cross-examination before imposing the exceptional sentence. Before the sentencing hearing, Mr. Blakely again moved to withdraw his guilty plea, arguing that the State violated the plea agreement by advocating for an exceptional sentence. The trial court found that the State's sentencing brief did not suggest what the court ought to do, and denied the motion.
At the sentencing hearing held in October 2000, Ms. Blakely, Ralphy, various mental health experts, and a police officer were examined and cross-examined. After hearing a statement from Mr. Blakely, the trial court again imposed an exceptional sentence of 90 months on the kidnapping charge, to run concurrently with a standard sentence of 14 months on the assault charge. Mr. Blakely's motion to vacate the sentence was denied in January 2001 and this appeal followed.

PRESUMPTION OF INCOMPETENCE
Mr. Blakely first challenges the jury instructions given in the competency trial. He contends the trial court erred in refusing to instruct the jury that a defendant is presumed incompetent to stand trial if there is proof of a mental illness adjudication.
Jury instructions are sufficient if they are supported by substantial evidence, allow the parties to argue their theories of the case, and properly inform the jury of the applicable law. State v. Irons, 101 Wash. App. 544, 549, 4 P.3d 174 (2000). Mr. Blakely argued at the competency trial that the civil court's conclusion that he lacked competence to represent himself in the trust and dissolution proceedings raised a presumption of incompetence to stand trial on the criminal charges. Although the trial court allowed admission of the civil court's findings, it held as a matter of law that the civil order did not constitute an adjudication of incompetence. On that basis, the trial court declined to instruct the jury that a mental illness adjudication rebutted the presumption of competence. The trial court properly found that neither the evidence nor the law supported Mr. Blakely's proposed instruction.
The test for competency to stand trial is whether the defendant is able to understand the proceedings against him or her and can assist in his or her defense. In re Pers. Restraint of Fleming, 142 Wash.2d 853, 862, 16 P.3d 610 (2001). A rebuttable presumption of mental incompetency is raised by proof of a mental illness adjudication. State v. Smith, 97 Wash.2d 801, 803, 650 P.2d 201 (1982); State v. Bonner, 53 Wash.2d 575, 587-88, 335 P.2d 462 (1959). On the other hand, "[i]t is the fact of mental incompetency, and not the adjudication of mental illness, that determines one's inability to form an intent to commit an offense, or his inability, after an offense has been committed, to aid in his defense." Id. at 586, 335 P.2d 462 (emphasis omitted).
The civil court deciding Mr. Blakely's trust and dissolution cases found that the weight of *155 past and current psychological evaluations supported a finding that Mr. Blakely was not competent to understand the nature and complexity of the trust issues. Consequently, a guardian ad litem was appointed to represent his interests in those cases only. Mr. Blakely was not, however, adjudged to have a mental illness or to be generally incompetent. As the civil court stated in its order appointing the guardian ad litem, "The court's findings and conclusions in this case shall have no precedential or preclusive effect on any other civil or criminal proceeding involving Ralph H. Blakely, Jr. and the matters at issue therein." Def.'s Ex. 1, at 2. Because the civil court's order did not presume to apply beyond the time frame and issues of the trust and dissolution proceedings, it did not constitute an actual adjudication of mental illness. The order served as relevant evidence of Mr. Blakely's ability to understand the criminal proceedings and to assist in his defense, but it did not give rise to a presumption that Mr. Blakely was incompetent. Consequently, the order did not support an instruction declaring that proof of a prior mental illness adjudication raised a presumption of incompetence. Irons, 101 Wash.App. at 549, 4 P.3d 174.

VIOLATION OF THE PLEA AGREEMENT
Mr. Blakely's next contention is that the prosecutor violated the plea agreement by advocating for an exceptional sentence upward. He argues that the prosecutor effectively undercut the recommendation of a standard sentence by discussing in the sentencing brief recent decisions on the factual bases for exceptional sentences and by eliciting testimony at the sentencing hearing to support aggravating factors.
A plea bargain is a contract between the criminal defendant and the prosecutor. State v. Talley, 134 Wash.2d 176, 182, 949 P.2d 358 (1998); State v. Sledge, 133 Wash.2d 828, 838-39 n. 6, 947 P.2d 1199 (1997). Due process requires the prosecutor to adhere to the terms of the contract by recommending the agreed-upon sentence. Talley, 134 Wash.2d at 183, 949 P.2d 358; Sledge, 133 Wash.2d at 839, 947 P.2d 1199. The prosecutor's conduct at the sentencing hearing must not undercut the plea bargain:
Although the recommendation need not be made enthusiastically, the prosecutor is obliged to act in good faith, participate in the sentencing proceedings, answer the court's questions candidly in accordance with RPC 3.3 and, consistent with RCW 9.94A.460, not hold back relevant information regarding the plea agreement.6
6 RPC 3.3 states:
"(a) A lawyer shall not knowingly:
"(1) Make a false statement of material fact or law to a tribunal."
"A prosecutor, like any other attorney, has a duty of candor toward the tribunal which precludes it from making a false statement of material fact or law to such tribunal." [State v.] Coppin, 57 Wash.App. [866,] 874 n. 4[, 791 P.2d 228 (1990)].
RCW 9.94A.460 states in part:
"The prosecutor shall not agree to withhold relevant information from the court concerning the plea agreement."
Talley, 134 Wash.2d at 183, 949 P.2d 358. Mere participation in an evidentiary hearing convened by the court to determine whether evidence supports an exceptional sentence will not undercut the State's agreed-upon sentence recommendation. Id. at 185-86, 949 P.2d 358.
Mr. Blakely cites In re Pers. Restraint of Palodichuk, 22 Wash.App. 107, 589 P.2d 269 (1978) for the principle that less than wholehearted support for the terms of the plea bargain can constitute a breach. In Palodichuk, the prosecutor recommended a suspended sentence and probation, but then told the court he had obtained new information that gave him "`second thoughts about that recommendation.'" Id. at 109, 589 P.2d 269 (emphasis omitted). The prosecutor's reservations did more than express less than wholehearted support for the terms of the plea bargain, they seriously undercut the agreement. See Talley, 134 Wash.2d at 184, 949 P.2d 358 (discussing Palodichuk).
Similarly, the prosecutor in Sledge recommended a standard range sentence for a juvenile offense, but then extensively examined the probation counselor concerning her reasons for recommending an exceptional sentence, presented the testimony of a parole *156 officer who reported problems with the juvenile, and gave a detailed summary of the aggravating factors to the court. The Supreme Court found that the prosecutor's fervor in setting out and emphasizing evidence supporting the aggravating factors undercut the plea bargain. Sledge, 133 Wash.2d at 842-43, 947 P.2d 1199.
As the Supreme Court stated in Talley, 134 Wash.2d at 183, 949 P.2d 358, the prosecutor need not make the agreed sentencing recommendation enthusiastically, but must not appear to advocate for an exceptional sentence. The State's mere participation in an evidentiary hearingpresenting relevant evidence to the court and responding to its inquirieswill not constitute a breach of the plea bargain, while advocacy for an exceptional sentence by placing emphasis on aggravating factors will. See Talley, 134 Wash.2d at 186, 949 P.2d 358; Sledge, 133 Wash.2d at 843, 947 P.2d 1199.
Here, the prosecutor consistently told the court he recommended the high end of the standard range. At the July 2000 sentencing hearing, the court found two aggravating factorsdeliberate cruelty and domestic violence in the presence of the minor childand imposed an exceptional sentence. When the trial court later decided it needed to conduct an evidentiary hearing to consider the evidence supporting an exceptional sentence, the prosecutor responded that "[w]e of course are not proponents of an exceptional sentence in these proceedings," but asked if he should subpoena witnesses. Report of Proceedings (RP) at 563. The court asked him to subpoena Ms. Blakely and any witnesses who observed Ralphy during the kidnapping incident. However, the court added, the evidentiary hearing was probably an "exercise in futility," because there was no dispute that Mr. Blakely put his wife in an apple wood box and kept her there in the presence of Ralphy. RP at 564. Apparently the trial court intended to impose an exceptional sentence based on the record, regardless of the State's recommendation.
Most of the evidence challenged by Mr. Blakely was presented by the State in response to assertions by the defense. For instance, before the evidentiary hearing, the State filed a response brief to Mr. Blakely's motion for a standard range sentence. Mr. Blakely had argued that Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) prohibited the trial court from imposing an exceptional sentence based on facts that had not been established by a jury beyond a reasonable doubt. The State's response brief examined the precedential effect of Apprendi and concluded that "[t]he court is not required to provide the defendant with a jury trial on the issue of whether an exceptional sentence will be imposed." CP at 578. Defense counsel moved to withdraw the guilty plea on the basis that the State's response brief violated the plea agreement by advocating for an exceptional sentence. In response, the prosecutor stated, "I hope that I have never at any point done anything that the court has interpreted as advocating an exceptional sentence in this case, because I did have an agreement with counsel which prohibited me from doing that." RP at 585. In denying the motion to withdraw the guilty plea, the court found that the State's response brief did not advocate a particular sentence and did not give "even the narrowest suggestion of what the court ought to do." RP at 586.
As would be expected, the prosecutor's involvement in the evidentiary hearing was problematical. He was required to conduct examinations and cross-examinations of the witnesses in a manner that would present an accurate record to the court, while at the same time refraining from advocacy for the exceptional sentence he knew the court intended to impose. See Talley, 134 Wash.2d at 183, 949 P.2d 358. During the examination of Ms. Blakely, the prosecutor asked if she was afraid of Mr. Blakely during the kidnapping. She answered yes. It was the court, not the prosecutor, who asked a psychologist defense witness if Mr. Blakely could deliberately act in a cruel way. The witness answered that he could not make an opinion. Later, when the State presented the testimony of two mental health witnesses, the prosecutor anticipated the court's question and asked each of them if Mr. Blakely had the capacity to be cruel. Both answered that he did. Following this testimony, the *157 court asked the prosecutor if he wished to be heard regarding the sentence recommendation. He responded, "Judge, [I] don't want to be heard right now. My understanding was that we had an agreed recommendation for a high end sentence, and that's what I continue to recommend to the court. Unless counsel wants to deviate from that recommendation, I don't have anything to say." RP at 1038.
Compared to the "second thoughts" expressed in Palodichuk, 22 Wash.App. at 109, 589 P.2d 269, and the detailed summary of aggravating factors given by the prosecutor in Sledge, 133 Wash.2d at 843, 947 P.2d 1199, the prosecutor's conduct here does not rise to advocacy for an exceptional sentence. Unlike in Sledge, where the State insisted upon the evidentiary hearing with witnesses, here defense counsel moved for the hearing. As an officer of the court, the prosecutor was obliged to participate in the hearing, to call witnesses that would be helpful to the court, and to anticipate the questions the court wished to ask. See Sledge, 133 Wash.2d at 840, 947 P.2d 1199. The State walks a thin line between, on the one hand, maintaining its duty to present relevant evidence and respond to the sentencing court's inquiries, and on the other hand, meeting its equally important obligation to uphold the plea agreement. Talley, 134 Wash.2d at 187, 949 P.2d 358. The important point is that the State must not in the process contradict its recommendation for a standard range sentence. Sledge, 133 Wash.2d at 840, 947 P.2d 1199.
On balance, considering the sentencing court's conclusion from the start that undisputed facts in the record supported an exceptional sentence based on domestic violence and deliberate cruelty, the prosecutor's conduct in the evidentiary hearing did not undercut his insistence that he recommended a standard range sentence. Addressing this issue, the trial court noted that it tried to pay attention to the prosecutor's conduct
in regard to the difficult position in which the State was put by having recommended to the court a sentence within the standard range, having the court indicate that an exceptional sentence may be appropriate, having the court indicate those subjects that would need to be presented at a sentencing hearing, and then having the laboring oar in presenting the testimonial matters to the court.
RP at 1056. The sentencing court concluded that the prosecutor confined himself to the matters that concerned the court and did not advocate for an exceptional sentence. The record supports that conclusion. Consequently, the State did not breach the plea agreement.

EXCEPTIONAL SENTENCE
Mr. Blakely next challenges his exceptional sentence. The trial court found two aggravating factors: (1) Mr. Blakely's conduct during the kidnapping manifested deliberate cruelty to his wife, former RCW 9.94A.390(2)(a) (1997); and (2) the offense involved domestic violence plus deliberate cruelty and commission within sight or sound of the victim's minor child, former RCW 9.94A.390(2)(h)(ii), (iii) (1997). Mr. Blakely contends the aggravating factors violate the real facts doctrine, former RCW 9.94A.370(2) (1996). He also contends the sentencing court violated the holding in Apprendi, 530 U.S. at 490, 120 S.Ct. 2348 that requires a jury determination of the facts used to support an exceptional sentence outside the maximum range. Finally, he asserts the sentencing hearings violated due process by preventing defense counsel from cross-examining Ms. Blakely and by denying him the right to allocution.
I. The Real Facts Doctrine.
Under the Sentencing Reform Act of 1981, a trial court must impose a sentence within the standard range for the offense unless the court finds substantial and compelling reasons justifying an exceptional sentence. Former RCW 9.94A.120(1), (2) (1998); State v. Ferguson, 142 Wash.2d 631, 643-44, 15 P.3d 1271 (2001). Several nonexclusive mitigating and aggravating factors are provided in former RCW 9.94A.390 (1997), including the mitigating circumstance of diminished capacity (former RCW 9.94A.390(1)(e) (1997)) and the aggravating circumstances mentioned above. In reviewing an exceptional sentence, this court asks three questions: *158 (1) Are the reasons given by the sentencing court supported by the record, using the clearly erroneous standard of review? (2) Do the reasons justify departure from the standard range as a matter of law? (3) Is the sentence clearly too excessive or too lenient, using the abuse of discretion standard of review? Ferguson, 142 Wash.2d at 646, 15 P.3d 1271.
Mr. Blakely contends the trial court erred as a matter of law in considering facts that established a more serious crime than that to which he pleaded guilty. The so-called real facts doctrine of former RCW 9.94A.370(2) (1996) provides that the sentencing court generally may not use facts that establish a more serious crime or additional crimes as the basis for a sentence outside the presumptive range. In exchange for dismissing the charge of first degree kidnapping, the State agreed to allow Mr. Blakely to plead guilty to second degree kidnapping. As charged in the original information, the first degree kidnapping count alleged intentional abduction of a person with the intent to inflict extreme mental distress. RCW 9A.40.020(1)(d). Second degree kidnapping does not include the same intent element. RCW 9A.40.030. Mr. Blakely contends the finding of deliberate cruelty constitutes the same element as intent to inflict extreme mental distress, in effect allowing the court to sentence him for the more serious crime.
Deliberate cruelty has been defined as "gratuitous violence or other conduct which inflicts physical, psychological, or emotional pain as an end in itself." State v. Scott, 72 Wash.App. 207, 214, 866 P.2d 1258 (1993), aff'd sub nom. State v. Ritchie, 126 Wash.2d 388, 894 P.2d 1308 (1995), quoted in State v. Copeland, 130 Wash.2d 244, 296, 922 P.2d 1304 (1996). In Ferguson, 142 Wash.2d at 648-49, 15 P.3d 1271, the Supreme Court held that deliberate cruelty could not be used to elevate a sentence for second degree assault because an element of the charge is the intent to do bodily harm. The court found that the defendant's charged offense, intent to inflict harm by exposing another to the human immunodeficiency virus (HIV), implicitly contains elements that constitute deliberate cruelty. Id. at 651, 15 P.3d 1271.
Citing Ferguson, Mr. Blakely contends deliberate cruelty is implicitly the same as the infliction of extreme mental distress element of first degree kidnapping, and therefore violates the real facts doctrine. But gratuitous violence with the intent to inflict emotional pain (deliberate cruelty, Scott, 72 Wash.App. at 214, 866 P.2d 1258) is not the same as the intent to inflict extreme mental distress. Even under the precedent of Ferguson, therefore, the real facts doctrine likely does not preclude deliberate cruelty as an aggravating factor in an exceptional sentence for second degree kidnapping. However, recognizing that Ferguson may direct a different conclusion, we decline to affirm the exceptional sentence on the basis of deliberate cruelty under former RCW 9.94A.390(2)(a) (1997). Instead, we find that the domestic violence aggravating factors alone support the exceptional sentence.
We begin by noting that the real facts doctrine does not apply to the domestic violence aggravating factors of former RCW 9.94A.390(2)(h) (1997). Former RCW 9.94A.370(2) (1996). The real facts statute specifically allows the court to consider acts of domestic violence that involve deliberate cruelty or intimidation of the victim as well as acts of domestic violence committed in the presence of the victim's or offender's minor child. Former RCW 9.94A.370(2) (1996); former RCW 9.94A.390(2)(h)(ii), (iii) (1997). Because the trial court found that these aggravating circumstances also supported a departure from the standard range, the exceptional sentence is justified as a matter of law.[3]State v. Cardenas, 129 Wash.2d 1, 12, *159 914 P.2d 57 (1996) (an appellate court may uphold an exceptional sentence if satisfied that the trial court would have imposed the same sentence without the prohibited aggravating factor).
Mr. Blakely additionally contends that the sentence of 90 months is excessive in light of the standard range sentence of 13 to 17 months for second degree kidnapping. Former RCW 9.94A.310 (1998); former RCW 9.94A.320 (1998). He fails to take into consideration the firearm enhancement of 36 months, which makes the high end of the standard range for this crime 53 months. Former RCW 9.94A.310(3)(b) (1998). We will not disturb the trial court's discretion unless we find that no reasonable judge would have imposed the same sentence. Cardenas, 129 Wash.2d at 13, 914 P.2d 57. Here, the trial court stated that "[t]here is a part of the court's thinking that suggests that 90 months as an exceptional sentence is an insufficient judicial response to this conduct." RP at 1053. Given the circumstances of the crime, we cannot say that no reasonable judge would have made the same decision. Cardenas, 129 Wash.2d at 13, 914 P.2d 57.
II. Application of Apprendi.
Mr. Blakely contends the United States Supreme Court decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) provides that the factual basis for an exceptional sentence upward must be submitted to a jury and proved beyond a reasonable doubt. However, recently the Washington Supreme Court in State v. Gore, 143 Wash.2d 288, 314, 21 P.3d 262 (2001) held that Apprendi does not apply to factual determinations that support reasons for exceptional sentences upward. Gore held that Washington's statutory scheme permits a judge to impose an exceptional sentence within the maximum range determined by the Legislature. Id. at 313-14, 21 P.3d 262. Because the statutory and nonstatutory aggravating factors neither increase the maximum sentence nor define separate offenses calling for separate penalties, the Apprendi rule is not triggered. Id. at 314, 21 P.3d 262. Consequently, the facts supporting the exceptional sentence here did not have to be submitted to a jury or proved beyond a reasonable doubt. Id. at 315, 21 P.3d 262; see also State v. Hopkins, 109 Wash.App. 558, 569, 36 P.3d 1080 (2001).
III. Due Process and the Sentencing Hearing.
During the first sentencing hearing, defense counsel did not cross-examine Ms. Blakely during her victim's statement. He now contends he was entitled by due process to confront the witnesses at the sentencing hearing and further contends he was not granted a formal opportunity for allocution.
The Sixth Amendment confrontation clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." Generally, due process is satisfied in the context of a sentencing hearing as long as the defendant has an opportunity to rebut the evidence presented. State v. Strauss, 119 Wash.2d 401, 418-19, 832 P.2d 78 (1992). While the effect of the confrontation clause on sentencing hearings has not yet been established in Washington, id. at 414-15, 832 P.2d 78, we need not reach this issue here because Mr. Blakely was given the opportunity to cross-examine Ms. Blakely and all the other witnesses at the evidentiary hearing. Ms. Blakely's testimony in the first sentencing hearing constituted a victim impact statement rather than evidence to support an aggravating factor. See former RCW 9.94A.110 (1998). When she testified as a witness at the subsequent evidentiary hearing, however, defense counsel cross-examined her as extensively as he did all the other witnesses.
As for Mr. Blakely's right of allocution, he seems to argue that he was denied the opportunity to give a formal statement before sentence was pronounced. A defendant's right of allocution is derived from state statutes and is not constitutional in nature. In re Pers. Restraint of Echeverria, 141 Wash.2d 323, 335, 6 P.3d 573 (2000). As with the victim impact statement, the offender is provided an opportunity to address the sentencing court before sentence is *160 imposed. Former RCW 9.94A.110 (1998); Echeverria, 141 Wash.2d at 335, 6 P.3d 573. The statute does not require that the offender's statement be made immediately before imposition of the sentence and does not require a formal request from the court. Id. at 336, 6 P.3d 573.
In this case, the trial court asked Mr. Blakely at the first sentencing hearing and at the evidentiary hearing if there was anything he wanted to say. On both occasions Mr. Blakely took the opportunity to explain to the court his version of the events and the motivations of the witnesses against him. Although the trial court did not specifically ask Mr. Blakely if he had anything to say in mitigation of the sentencethe better course to scrupulously comply with former RCW 9.94A.110 (1998), according to Echeverria, 141 Wash.2d at 336-37, 6 P.3d 573clearly Mr. Blakely understood that he was asked whether he had information that supported a lower sentence.

PRO SE ISSUES
Mr. Blakely raises additional issues pro se, including contentions that the State withheld evidence, that the weapon enhancement was added as retaliation for Mr. Blakely's complaints against jail conditions, and that his counsel was ineffective.
According to the pro se brief, the State failed to produce the registration on the truck used in the kidnapping and withheld evidence that proved Ms. Blakely used poison to control his actions during the kidnapping. Mr. Blakely also alleges that the prosecutor withheld a copy of a 1995 social security disability form that shows his wife attempted to cheat the government by forging Mr. Blakely's name to a false claim. Besides the fact that Mr. Blakely fails to show how the alleged withholding of this evidence affected his guilty plea, he also fails to show any reference in the record to the purported evidence. Matters mentioned in the brief but not included in the record cannot be considered on appeal. State v. Stockton, 97 Wash.2d 528, 530, 647 P.2d 21 (1982), cited in State v. McFarland, 127 Wash.2d 322, 335, 899 P.2d 1251 (1995).
Similarly, the record shows no evidence to support an inference that the State added the deadly weapon enhancement in retaliation for Mr. Blakely's threat to sue Grant County for intolerable jail conditions. In April 2000, Mr. Blakely filed "A Claim for Discrimination and Negligence and Punishment" that alleged he had been forced to live in isolation with bacterial and viral infections, had been denied an operation that would have fixed his "brain functions," and had been mistreated by inmates and staff at the jail. CP at 399-400. He requested a settlement of $5 million on the claim. Beyond the accusations in the claim, nothing in the record supports the validity of these assertions. The amended information adding the deadly weapon enhancement to the two first degree kidnapping charges was filed in July 2000. Although the amendment was made after Mr. Blakely's discrimination claim, nothing in the record supports an inference that it was made in retaliation for Mr. Blakely's threat to sue.
Insufficient record also defeats Mr. Blakely's contention that he received ineffective assistance of counsel. To prove ineffective counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that counsel's representation prejudiced the defendant. McFarland, 127 Wash.2d at 334-35, 899 P.2d 1251. Attorney competency is determined based only on the record below. Id. at 335, 899 P.2d 1251. We engage a strong presumption that counsel was effective. Id. Mr. Blakely contends his counsel was deficient in failing to attend his court-ordered mental health evaluations, in pressuring him to enter into the guilty plea without explaining the possible sentence, and in failing to gather the necessary evidence to impeach his wife's testimony.
Defendants in noncapital cases generally do not have a right to have counsel present during psychological examinations. State v. Decker, 68 Wash.App. 246, 251, 842 P.2d 500 (1992). Counsel may attend, but strictly as an observer, not as an active participant. State v. Nuss, 52 Wash.App. 735, 741, 763 P.2d 1249 (1988). When a defense of diminished capacity is raised, the defendant waives his privilege against self-incrimination. Id. at 742, 763 P.2d 1249. Nothing in the record indicates that Mr. Blakely ever requested the presence of counsel at his *161 mental health evaluations or that the presence of counsel would have been of any benefit to his case.
The record also fails to show that defense counsel pressured Mr. Blakely to accept the terms of the plea agreement. A guilty plea must be entered knowingly, voluntarily, and intelligently. State v. Ross, 129 Wash.2d 279, 284, 916 P.2d 405 (1996). The defendant must understand the plea's direct sentencing consequences. Id. A claim that the defendant was coerced to plead guilty must be supported with more than self-serving allegations. State v. Osborne, 102 Wash.2d 87, 97, 684 P.2d 683 (1984).
During the hearing on the plea agreement held in July 2000, the court asked Mr. Blakely if he understood the terms of the agreement, the sentence range, and the fact that the trial court was not bound by the terms of the agreement to impose the sentence recommended by the State. Mr. Blakely first asked to die and claimed his mind was not clear due to lack of sleep, but eventually agreed that he understood. He went over the plea agreement with the court and with trial counsel before signing. Only later did he claim his doctors and lawyers pressured him into signing the agreement. Nothing in the record beyond his bare assertion of fact supports his allegations that the plea was involuntary.
Finally, the record does not support Mr. Blakely's assertion that defense counsel failed to investigate evidence that Ms. Blakely orchestrated the kidnapping by poisoning her husband and controlling his mind. As with the other claims of ineffective assistance of counsel, our review on direct appeal is limited to matters within the trial record. McFarland, 127 Wash.2d at 335, 899 P.2d 1251. With support for Mr. Blakely's claims nonexistent in this record, we are compelled to find that defense counsel's representation was effective.
Affirmed.
WE CONCUR: SWEENEY and KURTZ, JJ.
NOTES
[1] RCW 10.77.090(1) provides that the trial court may order a defendant who is suspected to be incompetent to undergo an evaluation for up to 90 days. After that time, "if the jury or court, as the case may be, finds that the defendant is incompetent, the charges shall be dismissed without prejudice." Former RCW 10.77.090(3) (1989) (relating to defendants charged with felonies).
[2] See North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (a defendant may plead guilty while disputing the facts alleged by the prosecution).
[3] At oral argument, the State admitted that the trial court was not sure if the aggravating factor of domestic violence in the presence of the minor child, standing alone, would support an exceptional sentence. The record indicates, however, that the trial court considered deliberate cruelty and domestic violence with deliberate cruelty sufficient to support the sentence. Whether or not deliberate cruelty under former RCW 9.94A.390(2)(a) (1997) could be used to elevate the sentence for second degree kidnapping, the alternate basis of domestic violence with deliberate cruelty supports the exceptional sentence here. State v. Cardenas, 129 Wash.2d 1, 12, 914 P.2d 57 (1996).